## 71086. WHISNANT v. COOTS et al.
### (337 SE2d 766)

BANKE, Chief Judge.

The appellant sued the appellees to recover for injuries she allegedly sustained as the result of an incident which took place at a private swimming pool located at their residence. Because the action was filed two years and two days after the alleged tort occurred, the appellees moved for summary judgment based on the running of the applicable statute of limitation. See generally OCGA § 9-3-33. This appeal is from the grant of that motion.

In response to the motion for summary judgment, the appellant amended her complaint to allege that she had been physically and mentally incapacitated by her injuries for a period of four weeks after the accident, to the extent that she was incompetent to manage her own affairs. On the same day, she filed an affidavit in which she averred that she had been physically and mentally incapacitated from managing her affairs or conducting the ordinary business of life for a period of "at least two weeks" after the accident and that she had been similarly incapacitated for four days following corrective surgery which she underwent approximately a year later, as treatment for her injuries.

When questioned about these alleged periods of incapacity during a subsequent deposition, the appellant testified as follows:

"Q. [A]bout how much time do you think you were mentally incapacitated because of this incident?

"A. I have no idea how to answer you on that because like I say, a lot of times it has something to do with the weather. It all depends on how long I have had to stand on my leg. It all depends on a lot of things that aggravate the injury, and I have no idea how to put it down in time. There may be — like this past week I have really been through it because of the humidity.

"Q. Do you go through phases of several hours or several minutes.

"A. Several days . . .

"Q. What I'm really trying to find out right now is during these periods of mental incapacity, what you can't do. What sets these periods apart from the rest of your condition?

"A. What sets them apart? Well, like there's days when my leg is really bothering me bad that I might not be able to do the wash. I may not be able to cook. The days that it doesn't bother me that bad, I can get a little bit of work done.

"Q. During these times when your leg really hurts you, are you still aware of what's going on around you?

"A. Yes.

"Q. So your mental facilities are still intact?

"A. I'm not off my rocker, no.

"Q. You can carry on conversations?

"A. Yes.

"Q. You can take care of things that take mental thinking? . . .

"A. Yes."

The appellant's husband was also questioned about the appellant's alleged mental disability following the accident and responded as follows:

"Q. Since the time of the incident, has your wife ever been mentally incapacitated?

"A. No.

"Q. So she's never been in the state where she was unable to think about what was going on? She's always mentally aware?

"A. She's been mentally aware. There's been nothing wrong mentally." *Held*:

Pursuant to OCGA § 9-3-90 (a), "[m]inors and persons who are legally incompetent *because of mental retardation or mental illness,* who are such when the cause of action accrues, shall be entitled to the same time after their disability is removed to bring an action as is prescribed for other persons." (Emphasis supplied.) With reference to the predecessor to this statute, former Code § 3-801, this court has held as follows: "The test for mental incapacity is not whether one did not manage his own affairs, acquiescing in the management thereof by others, or whether one has merely managed his affairs unsuccessfully or badly. That one was not 'bright' or not clear about some matters occurring during the period is not evidence of mental incompetency. (Cit.) The test is one of capacity — whether the individual, being of unsound mind, could not manage the ordinary affairs of his life. (Cit.)" *Tri-Cities Hosp. Auth. v. Sheats,* 156 Ga. App. 28, 30 (273 SE2d 903) (1980), aff'd 247 Ga. 713 (279 SE2d 210) (1981). See also *Lowe v. Pue,* 150 Ga. App. 234 (257 SE2d 209) (1979); *Mayor &c. of Athens v. Schaefer,* 122 Ga. App. 729 (178 SE2d 764) (1970). Accord *Mullins v. Barrett,* 204 Ga. 11, 15 (48 SE2d 842) (1948).

Neither former Code § 3-801, nor OCGA § 9-3-90, nor any other statute characterizes physical, as opposed to mental, incapacity as a legal disability which will toll the statute of limitation for bringing a lawsuit. Some apparent support for such an interpretation, however, may be found in *Lowe v. Pue*, supra. There, the case of *City of Atlanta v. Barrett*, 102 Ga. App. 469 (116 SE2d 654) (1960), was incorrectly quoted for the proposition that former Code Ann. § 3-801 is applicable "where, as a result of the occurrence giving rise to the cause of action [the plaintiff] becomes mentally *or* physically incapacitated so as to be incapable of acting for himself in carrying on his business and in prosecuting his claim . . ." (Emphasis supplied.) 150 Ga. App. at 236. The actual holding in *City of Atlanta v. Barrett*, however, was merely that a plaintiff's allegation that he was "wholly and completely mentally *and* physically disabled from conducting his own business and own affairs" sufficiently invoked the tolling statute (former Code § 3-801, supra) to withstand a general demurrer. Id. at 472. (Emphasis supplied.) Thus, that case cannot reasonably be construed as authority for the proposition that the tolling statute is invoked by physical disability alone.

In the present case, the appellant specifically averred in her affidavit that for at least two weeks after the accident, and again for at least four days after her surgery a year later, she had been mentally incapable of acting for herself, managing her own affairs, or managing the ordinary business of life. However, in her deposition she testified unequivocally, and in direct contradiction of these averments, that she had always been aware of what was going on around her, capable of carrying on conversations, and able to "take care of things that take mental thinking." She further testified, again in direct contradiction of her affidavit, that she had "no idea" how long her periods of alleged incapacity had actually lasted.

"[W]here there is a direct contradiction in the testimony of the respondent as to a material issue of fact . . . that party's unfavorable testimony [will] be taken against him." *Tri-Cities Hosp. Auth. v. Sheats*, 247 Ga. at 714, supra. Under the circumstances of this case, we hold that the trial court did not err in concluding as a matter of law that the tolling statute did not apply and in granting summary judgment to the appellees based on the running of the statute of limitation. We do not consider this court's holding in *Emory Univ. v. Padgett*, 163 Ga. App. 299 (294 SE2d 300) (1982), to be authority for a contrary result. There, the plaintiff's deposition testimony merely established conduct which was inconsistent with her affirmation of mental incapacity. Here, the plaintiff's testimony directly contradicted her affirmation of such incapacity.

*Judgment affirmed. McMurray, P. J., and Benham, J., concur.*

Decided October 16, 1985 —
Rehearing denied November 5, 1985 — 

*Donald F. Walton, Earl B. Benson, Jr., Therese S. Barnes, Kent S. Murphy*, for appellant.
*James B. Hiers, Jr., R. Coleman Miller*, for appellees.