## 74321. CHAPMAN v. BURKS et al.
### (357 SE2d 832)

BEASLEY, Judge.

Plaintiff Chapman appeals the grant of summary judgment to her uninsured motorist carrier, Commercial Union Insurance Company, and defendants Burks and Robinson. She had filed this suit on May 17, 1984, for personal injuries sustained in a four-car collision on May 15, 1982. It was commenced at the same time she voluntarily dismissed a suit against her own driver, which she had instituted in 1983. In the new suit she alleged that the two-year statute of limitation provided by OCGA § 9-3-33 was tolled by her mental and physical total disability for a period immediately following the mishap.

After discovery which included plaintiff's deposition, plaintiff's insurer moved for summary judgment although it was not a party. Pursuant to OCGA § 33-7-11 (d) it may do so. See *Vaughn v. Collum,* 136 Ga. App. 677 (222 SE2d 37) (1975), where the non-party insurer's motion to dismiss, also on the basis of the statute of limitation, was decided on its merits.

The trial court agreed that the action was time-barred as a matter of law and granted summary judgment to the insurer and to the two defendants, even though only one of the latter had filed a similar motion. This is permitted. " '(S)ummary judgment can be granted to a non-moving party provided that the grant is proper in all respects. [Cit.]' [Cits.]" *Eiberger v. West,* 247 Ga. 767, 770 (1) (a) (281 SE2d 148) (1981). On appeal, only the insurance company has filed an appellee brief, but this will not limit application of the decision to defendants as well.

Chapman maintains that her suit may be found timely in that there is a factual question to be resolved by a jury as to whether or not the statute of limitation was tolled under OCGA § 9-3-90 because she was mentally incompetent to handle her affairs for a period of nine to ten days after the collision. It is the first few days, of course, that count.

The trial court found that based on her deposition, Chapman demonstrated that she was not mentally incapacitated as contemplated by the law so as to toll the statute, because her deposition testimony showed that following the collision she was able to care for herself, was aware of what was going on about her, and could recall the collision in detail. The court cited *Tri-Cities Hosp. Auth. v.*

*Sheats*, 156 Ga. App. 28, 30 (273 SE2d 903) (1980). The court did not mention her affidavit, which was submitted in opposition to the motion for summary judgment.

Chapman contends that her affidavit, taken together with her deposition, shows sufficiently that she was unable to manage the ordinary affairs of her life during the relevant three days immediately after the collision. She contends also that the statements in the affidavit were not eviscerated by any inconsistency in the deposition as to her mental incapacity.

Appellee insurer, on the other hand, maintains that Chapman's deposition shows as a matter of law that she did not suffer from any mental incapacity following the collision which could toll the statute. In addition, it contends that her affidavit was an intentional contradiction of her deposition testimony in an attempt to create an issue of fact for jury resolution and is not to be considered.

1. Before we consider the evidence, we must focus on the law upon which Chapman relies to give life to her suit. At the time her cause of action arose, the law provided: "insane persons, . . . who are such when the cause of action shall have accrued, shall be entitled to the same time, after the disability shall have been removed, to bring an action, as is prescribed for other persons." Code Ann. § 3-801. "If either of the foregoing disabilities shall happen after the right of action shall have accrued, and shall not be voluntarily caused or undertaken by the person claiming the benefit thereof, the limitation shall cease to operate during its continuance." Code Ann. § 3-802.

The law was changed by the Code Commission, effective November 1, 1982 (OCGA § 1-1-9), to read: "persons who are legally incompetent because of mental retardation or mental illness, . . . , who are such when the cause of action accrues, shall be entitled to the same time after their disability is removed to bring an action as is prescribed for other persons." OCGA § 9-3-90. "If any person suffers a disability specified in Code Section 9-3-90 after his right of action has accrued and the disability is not voluntarily caused or undertaken by the person claiming the benefit thereof, the limitation applicable to his cause of action shall cease to operate during the continuance of the disability." OCGA § 9-3-91. Section 90 was amended in 1984, Ga. L. 1984, p. 580, but without making any change notable here.

We point up these changes because the judicially-formulated test has been developed and applied in cases under the various versions of the statute. We do not perceive that the legal concept has changed despite the modernizing of the statutory language, so that if the case precedent construes and applies the law effective in 1982, at the time of the collision and alleged disability, or the law as worded thereafter, it applies to this case as well.

In Chapman's case, it would be the "insane persons" disability,

or as it is characterized now, the "legally incompetent because of . . . mental illness" disability, which rescues her suit. Judicial interpretation has construed this category broadly. As recognized in *Tri-Cities Hosp. Auth.*, supra at 29, which case was affirmed, 247 Ga. 713 (279 SE2d 210) (1981): "[I]n *Lowe v. Pue*, [150 Ga. App. 234 (257 SE2d 209) (1979)], 'insane persons' as used in Code Ann. § 3-801 was construed as including the 'substantially similar' term 'mentally incompetent' persons, there being ' "no distinction between one mentally incompetent and one who is insane." ' . . . [A]llegations that the statute was tolled by reason of the plaintiff's 'mental incapacity' were held to be sufficient to withstand a motion to dismiss under Code Ann. § 81A-112 (b) (6)."

The test for the factfinder to apply has been described rather than neatly bound up in a few clear words, undoubtedly because the concept challenges crisp articulation. The law attempts to confine it to situations where it is not fair to charge a suitor with the running of the clock, because of his mental condition. Building an appropriately sized corral by way of a clear test of words which will fence out tardy suitors whom the law will not forgive, has eluded us.

*Tri-Cities*, supra at 29-30, captured the test as follows: " ' "[T]he question . . . is not whether [the plaintiff] is such an idiot or lunatic or so insane that he ought to be sent to the asylum, or even have a guardian for his person, but, was he . . . so " 'mentally incompetent' " (non compos mentis or insane), so unsound in mind, or so imbecile in intellect, that he could not manage his ordinary affairs of life? If there be such a degree of unsoundness of mind or imbecility as to incapacitate one from managing the ordinary business of life, it (would authorize a finding that the plaintiff) was " 'mentally incompetent' " and thus (a finding) that the statute was tolled during the period of time the (plaintiff) is " 'mentally incompetent' " and until this disability shall have been removed. [Code § 3-801 . . .'"] [Cit.]' *Lowe*, 150 Ga. App. at 235-236, supra." *Tri-Cities* goes on: "The test for mental incapacity is not whether one did not manage his own affairs, acquiescing in the management thereof by others, or whether one has merely managed his affairs unsuccessfully or badly. That one was not 'bright' or not clear about some matters occurring during the period is not evidence of mental incompetency. *Gulf Life Ins. Co. v. Wilson*, 123 Ga. App. 631 (181 SE2d 914) (1971). The test is one of capacity — whether the individual, being of unsound mind, *could not* manage the ordinary affairs of his life. *Kell v. Bridges*, 77 Ga. App. 424 (48 SE2d 780) (1948) . . . [It means] an individual lacking in the capacity to manage his own affairs." At page 32, the opinion implies that evidence that "he was without sufficient mental capacity to perform or understand his conduct during the relevant period" would meet the test.

Part of the *Tri-Cities* explanation was quoted and applied as the test in *Curlee v. Mock Enterprises*, 173 Ga. App. 594, 598 (327 SE2d 736) (1985), and in *Whisnant v. Coots*, 176 Ga. App. 724, 725 (337 SE2d 766) (1985). In *Curlee* and in *Whisnant*, we found the evidence fell short of creating a jury question as to mental incapacity. In *Tri-Cities*, 247 Ga., supra at 714-715, the Supreme Court of Georgia found sufficient evidence upon its review of Sheats' deposition to send the question of tolling to the jury. Thus we have those three cases to measure this one by.

2. In those three cases, as in this one, it was not simply a matter of application of the test. Common to all four situations was the problem of what evidence plaintiff could legally rely on, when there was arguably a material conflict between what plaintiff said in various portions of his testimony.

The law as has been most recently stated and clarified, and thus as applies here, is that on summary judgment the self-contradictory testimony of a party-witness, if a reasonable explanation is not offered for the contradiction, must be construed against the party-witness. That is, the favorable portions of the contradictory testimony are excluded. This rule of evidence applies even when the party-witness is the respondent rather than the movant in summary judgment. *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986).

As instructed in *Prophecy Corp.*, supra at 30, on summary judgment the questions of whether the testimony is self-contradictory and whether a reasonable explanation has been offered are questions of law for the court to decide.

The first inquiry is whether, comparing the testimony in the deposition and in the affidavit, it is self-contradictory with regard to plaintiff's mental capacity during the first three days following the collision. We find that it is not, for in both the deposition and in the affidavit she described the mental agony she was in due to the great pain she was experiencing, the inability to retain food while at the same time suffering diarrhea, the belief that she had lost the baby with whom she was four months pregnant, the majority of the time spent in sleep, the crying, the passing out and dizziness when she attempted bathroom trips.

In the affidavit, she amplified somewhat on her mental condition, stating that she was in a daze at the scene of the collision, was delirious and unaware of all that was going on during those first days home in bed, was at that time unable to communicate intelligently because of her physical and mental condition, and was suffering some hallucinating, severe pain, and little understanding of what was happening.

We do not see a conflict which amounts to self-contradiction so as to require "a reasonable explanation" for the contradiction. Insofar

as there is one, considering the viewpoint of the trial court and appellee, it is explained by her affidavit. Although they conclude that she knew during those days what was happening and described what occurred, it is evident from her affidavit that her memory of the experience improved in the intervening years and that while she *now* was aware of what was happening to her and around her, she was not *then* aware. Also, of course, she learned from others some of the pieces she did not then have cognizance of. See as somewhat analogous the Supreme Court's view in *Prophecy Corp.*, supra at 30-31, Division 3.

Consequently, there was no legal requirement to excise her testimony insofar as it favored the finding of mental incapacity during the first few days after the collision. The evidence in this case is substantially distinguishable from that in *Curlee*, supra, where plaintiff demonstrably managed numerous and complicated affairs of his life, and in *Whisnant*, supra; where plaintiff described physical rather than mental incapacity and both she and her husband confirmed her mental capacity.

Finally, taking all of the record into account, we must apply "the general rule that on motion for summary judgment all evidence is to be construed against the movant." *Prophecy Corp.*, supra at 29. This of course includes reasonable deductions and inferences. *Norton v. Ga. R. Bank &c.*, 253 Ga. 596, 603 (322 SE2d 870) (1984); *Prudential Property & Cas. Ins. Co. v. Pritchett*, 169 Ga. App. 564, 567 (3) (313 SE2d 706) (1984). We conclude that there is sufficient evidence of mental incapacity for the jury to decide the issue.

In so doing, we caution that OCGA §§ 9-3-90 and 9-3-91 allow only mental, and not physical, disability to toll the time limitation. This was reiterated in *Whisnant v. Coots*, supra at 726. But we do not discount the effect which physical disability may have on mental capacity. It is, in the final analysis, a matter of proof. Here it does not "compel" or "demand" a finding of no mental incapacity such as to warrant summary judgment. See *Eiberger v. West*, 247 Ga. 767, 769, supra. "Where the facts are in doubt or dispute, this question [of whether or not a cause of action is barred by the statute of limitation] is one of fact to be determined by the trier of fact, . . . Ordinarily the question of mental capacity is one of fact to be determined by a jury. [Cit.]" *Curlee v. Mock Enterprises*, supra at 596 (2) and 599 (3).

*Judgment reversed. McMurray, P. J., and Sognier, J., concur.*

DECIDED MAY 12, 1987 —
REHEARING DENIED MAY 28, 1987.

*Charles E. Muskett*, for appellant.

*Robert P. Bleiberg, Richard B. Eason, Jr.*, for appellees.