A90A1755. HICKEY v. ASKREN.
(403 SE2d 225)

SOGNIER, Chief Judge.

Kathy Hickey brought suit against Edward Askren III, M.D., in June 1989 alleging medical malpractice, battery, and intentional infliction of emotional distress on the basis that his treatment of her rendered her so dependent on him that she submitted to sexual relations with him on two instances in 1981. Askren moved for summary judgment on the basis that the statute of limitation had run on Hickey's claims. The trial court granted the motion, and Hickey appeals.

The record establishes that appellant was referred to appellee by a state agency and became his patient in July 1978. Appellant admitted in her deposition that she ceased being appellee's patient in late 1981 after engaging in the second instance of sexual contact with appellee (the first instance having occurred shortly before). Appellant also admitted in her deposition that within a year after the sexual contact, she had informed a doctor of internal medicine and three mental health professionals that she had engaged in sexual contact with appellee. The record also contains a biography she submitted in 1983 to qualify for mental health treatment at Emory University in which she noted that "[a]fter three years of intense psychotherapy [with appellee, I] had sex with him & never saw him again." After detailing the extensive mental health treatment she received following her contact with appellee, appellant noted that she had "made casual

comments to these various therapists" about her treatment with appellee and the sexual contact she had had with him. She stated that until late 1988 she "simply was not aware of the extent" of the harm she allegedly experienced as a result of appellee's treatment and the sexual contact with him. In her affidavit appellant averred that she telephoned appellee often between 1981 and 1989 and "tried to ask him about our relationship. [Appellee] never revealed to me that his conduct was in any way wrongful, and I understood from our conversation that he thought everything about our relationship was normal." During the intervening years the record reveals that appellant executed a lease for an apartment she has maintained, has been gainfully employed at various establishments (although her work has been interrupted by extended periods of physical illness, such as severe chicken pox and gynecological ailments), that she has a driver's license and drives an automobile, and that she reads extensively and socializes with friends. It is uncontroverted that appellant has never been declared legally incompetent, and no legal guardian has ever been appointed for her.

1. Appellant contends the trial court erred by holding that her claims against appellee are time barred. As to appellant's battery claim (as distinguished from her malpractice claim), we affirm the trial court's ruling because the record is uncontroverted that the sexual contact which formed the basis for appellant's battery claim occurred in 1981. Therefore, because that claim is governed by OCGA § 9-3-33, setting forth a two year limitation period for the bringing of actions based on injuries to the person, see generally *Gowen v. Carpenter*, 189 Ga. App. 477, 478 (1) (376 SE2d 384) (1988), it is barred. Likewise, since the alleged unlawful acts causing the damage to appellant (appellee's alleged malpractice and the batteries) ended in 1981 and resulted in some damage to appellant at that time, appellant's cause of action for intentional infliction of emotional distress accrued in 1981, regardless how slight the actual damage may then have been, see *Adams v. Emory Univ. Clinic*, 179 Ga. App. 620, 621-622 (347 SE2d 670) (1986), and that claim is also time barred under OCGA § 9-3-33. Id.

2. In support of her enumeration that the trial court erred by granting appellee's motion for summary judgment as to her malpractice claim, appellant asserts that the malpractice statute did not begin to run until 1988 either because she did not discover the injury caused by appellee's alleged malpractice and sexual contact until then, see OCGA § 9-3-71 (a), or that appellee's alleged malpractice comes within the theory of continuing tort. We find no merit in either of these arguments.

(a) As noted above, appellant has admitted that appellee's treatment of her ended in 1981. Thus, the statute of limitation applicable

was former OCGA § 9-3-71, which provided that "an action for medical malpractice shall be brought within two years after the date on which the negligent or wrongful act or omission occurred," and the discovery rule as embodied in the current statute, OCGA § 9-3-71 (a), enacted in 1985, does not apply. (We note that this is not an instance in which all injury resulting from the alleged malpractice did not manifest itself until more than two years after the negligent act so as to render application of that statute constitutionally invalid under the ruling in *Shessel v. Stroup*, 253 Ga. 56 (316 SE2d 155) (1984).) The record clearly establishes that appellant was aware of the fact that the doctor/patient relationship existing between the parties had culminated in two instances of sexual contact, and was aware enough of the import of that contact to relate it to numerous other mental health professionals in the course of her treatments with them. While there is evidence in the record to support appellant's claim that she was not aware of the *extent* of the harm she allegedly experienced as a result of appellee's treatment and the sexual contact with him until late 1988, the record does not raise any questions of fact whether appellant knew about the nature of appellee's treatment of her, the sexual contact to which that treatment allegedly led, and the impact to some degree of that negligent treatment on her mental health. Compare *Lorentzson v. Rowell*, 171 Ga. App. 821 (321 SE2d 341) (1984) (question whether statute tolled by doctor's evasion regarding plaintiff's eye difficulties); *Stephen W. Brown Radiology Assoc. v. Gowers*, 157 Ga. App. 770, 773-775 (1) (278 SE2d 653) (1981) (statute tolled because patient could not have learned of negligent radiation treatment during recovery period from side effects). Thus, we cannot agree with appellant's argument that any question of fact exists that appellant was so completely unaware of any harm caused her by appellee's alleged negligent treatment of her and the sexual contact between them that the statute did not begin to run until 1988.

(b) We decline appellant's invitation to apply the theory of continuing tort to claims such as those she alleges against appellee. "A continuing tort is one inflicted over a period of time. [Cit.]" *Bitterman v. Emory Univ.*, 175 Ga. App. 348 (1) (333 SE2d 378) (1985). The fact that appellant may not have recognized, or discovered, the full impact of the alleged harm until 1988 does not obviate the fact that her exposure to the tortious acts producing the injury, i.e., the sexual contact and medical malpractice, ceased in 1981, compare *Everhart v. Rich's, Inc.*, 229 Ga. 798, 802 (194 SE2d 425) (1972) (continuing tort theory extended to apply to cases of damage from unknown hazard until continuing exposure to act producing injury is eliminated), and thus her reliance on the discovery rule here is misplaced. *Bitterman*, supra. We note that there is no evidence that appellee's therapy for appellant included the use of drugs, hypnosis, or any

other treatment whereby appellant may have incurred damage without her knowledge, so as to render this case analogous to situations which occur when a patient's injury has been concealed by the fraud of the tortfeasor. See *Schmidt v. Parnes*, 194 Ga. App. 622, 623 (1) (391 SE2d 459) (1990).

3. Appellant also argues that the statute of limitation on her malpractice claim was tolled pursuant to OCGA § 9-3-96 based on appellee's alleged fraudulent misrepresentations to appellant in the form of the telephone conversations outlined above. In view of the uncontroverted evidence adduced in the record, we do not agree with appellant that this argument presents a basis for reversing the trial court's grant of summary judgment to appellee. Appellant's extensive history of treatment for her mental problems after ending contact with appellee and her frank recital to successive mental health professionals about her former contact with appellee establishes that no question of fact exists that neither appellee's treatment and contact with appellant up to 1981 nor his later telephonic communications with her thereafter deterred appellant from seeking appropriate medical treatment elsewhere or prevented her from providing those subsequent therapists with all the facts on which her malpractice claim against appellee is based so as to toll the statute under OCGA § 9-3-96. See *Rowell v. McCue*, 188 Ga. App. 528, 530-531 (373 SE2d 243) (1988).

4. Appellant's final argument is that a question of fact exists whether the statute was tolled by appellant's mental incompetency under OCGA § 9-3-90, with the alternative argument that Georgia courts should recognize the theory of tortiously induced incompetence as set forth in cases like *Dundon v. United States*, 559 FSupp. 469 (ED NY 1983) (although mental incompetency does not toll statute of limitation in 28 USC § 2401 (b), statute is tolled while patient in coma allegedly induced by tortious act of government doctors). Regardless which version of the tolling statute is applied, see *Chapman v. Burks*, 183 Ga. App. 103, 104 (1) (357 SE2d 832) (1987), " '[t]he test for mental incapacity is not whether one did not manage his own affairs, acquiescing in the management thereof by others, or whether one has merely managed his affairs unsuccessfully or badly. That one was not "bright" or not clear about some matters occurring during the period is not evidence of mental incompetency. [Cit.] The test is one of capacity — whether the individual, being of unsound mind, *could not* manage the ordinary affairs of his life. [Cit.] . . . (It means) an individual lacking in the capacity to manage his own affairs.' " Id. at 105. Although appellant's deposition testimony raises questions of fact whether there were periods after 1981 during which she was unable to manage her own affairs, particularly during illness and hospitalization, even construing the evidence in her deposition mostly favorably in her behalf, see generally *Thacker v. Matthews Tuxedo*, 183

Ga. App. 474, 475 (359 SE2d 231) (1987), these periods would not encompass the five and one half years (outside of the two years before the limitation period expired) which had to be tolled in order to maintain the current suit. Although appellant stated in her affidavit that she was mentally incapable of bringing a legal action against appellee before January 1989, her averment that she was unable to function on a day-to-day basis throughout the seven and one half years since her cause of action arose is rebutted by her deposition testimony. "[T]he testimony of a party [/respondent on motion for summary judgment] is to be construed most strongly against him where it is self-contradictory, vague or equivocal. [Cit.] The standard to be applied is: (1) determined whether the testimony of the party is contradictory, (2) if a reasonable explanation is offered for the contradiction, that testimony will not be construed against the party, (3) the burden is on the party giving the testimony to offer a reasonable explanation, and (4) whether this has been done is an issue of law for the trial judge. [Cit.]" Id. Given the contradiction between appellant's affidavit and her deposition, the record reveals that appellant has offered no reasonable explanation for the contradiction and, as above, even tolling the statute during those episodes of incompetency she experienced during the relevant period (which may explain, to some degree, her statement in her affidavit), there is no reasonable evidence in the record to rebut appellee's claim on motion for summary judgment that appellant was able to handle her ordinary affairs of life at least two of the seven and a half years between the negligent acts alleged and the filing of the suit. Accordingly, under the circumstances of this case, we hold that the trial court did not err by concluding as a matter of law that the tolling statute did not apply and by granting summary judgment to appellee based on the running of the statute of limitation. *Whisnant v. Coots*, 176 Ga. App. 724, 726 (337 SE2d 766) (1985).

Aside from noting that the theory of tortiously induced incompetence as set forth in *Dundon*, supra, appears to have been created in response to the absence of any federal provision similar to OCGA § 9-3-90 for tolling the statue of limitation in 28 USC § 2401 (b) for mental incompetency, we do not find it necessary to address the merits of appellant's argument urging this court to recognize that theory because the facts of this case render any application thereof inappropriate here.

*Judgment affirmed. McMurray, P. J., and Carley, J., concur.*

DECIDED FEBRUARY 13, 1991 —
REHEARING DENIED FEBRUARY 26, 1991 —

Kathy Hickey, *pro se.*
*Sullivan, Hall, Booth & Smith, Henry D. Green, Jr., Mark A. Bayless,* for appellee.