A92A1251. STONE et al. v. RADIOLOGY SERVICES, P.A. et al.
(426 SE2d 663)

SOGNIER, Chief Judge.

Horace Stone and Katharine Stone filed a malpractice suit and loss of consortium claim on December 11, 1990 alleging that the defendant physicians and the professional associations that employed them had misdiagnosed Mr. Stone's condition by failing to recognize that a CAT scan of Mr. Stone's brain taken in September 1985 "showed a tumor on [Mr. Stone's] brain." The trial court granted the defendants' motions for summary judgment on their statute of limitation defense, and the Stones appeal.

1. The motion made by three appellees to dismiss this appeal for untimely filing of appellants' enumeration of error and brief, see Court of Appeals Rule 14 (a), is denied because appellants have shown by postmark date that these documents were timely filed. Court of Appeals Rule 4.

2. We find no error in the trial court's grant of summary judgment in favor of appellee Radiology Services, P.A., and its employee/physicians named in this suit on their statute of limitation defense. The record establishes that appellant Horace Stone had been experiencing severe headaches for many years, but a May 1983 brain scan had revealed no abnormalities. On September 30, 1985, Mr. Stone went to appellee Radiology Services, at which time a CAT scan of his brain was performed. Two appellees, physician employees of Radiology Services, reviewed the CAT film and signed a radiological report, which set forth that the CAT scan had revealed no areas of abnormal density within Mr. Stone's brain or abnormal intracranial calcifications, noted the dilatation in certain areas of the brain, which were most pronounced in the fourth ventricle of the brain, and concluded with the diagnostic impression that the described changes were "most consistent with cerebellar atrophy."

In early December 1988, an MRI scan of Mr. Stone's brain was taken by Radiology Services. Radiology Services did not have MRI technology available in 1985 and, as one of its employee-physicians

deposed, the MRI scan has advantages over other scans because it is more sensitive and reveals slightly different angles to physicians' view. The MRI scan revealed that Mr. Stone was suffering from an astrocytoma (a type of tumor) in his brain, rather than from changes consistent with cerebellar atrophy. The astrocytoma was surgically removed on December 27, 1988.

Mr. Stone contends summary adjudication was improper because appellees failed to establish that his injury occurred more than two years before December 11, 1990, the date suit was filed. We do not agree. "The critical issue is when did [Mr. Stone's] injury occur. In most misdiagnosis cases, the injury begins immediately upon the misdiagnosis due to the pain, suffering or economic loss sustained by the patient from the time of the misdiagnosis until the medical problem is properly diagnosed and treated. [Cit.] The misdiagnosis itself is the injury and not the subsequent discovery of the proper diagnosis. [Cit.]" *Whitaker v. Zirkle*, 188 Ga. App. 706, 707 (1) (374 SE2d 106) (1988). No question of fact remains that the alleged misdiagnosis of appellee Radiology Services and its employees occurred in September 1985.

Citing *Whitaker*, supra, Mr. Stone argues that his injury was not appellees' misdiagnoses but rather the increased growth of the tumor in his brain occurring subsequent to their misdiagnoses, and hence his injury did not occur until at least December 27, 1988, when his brain surgery was conducted. In *Whitaker*, a nevus on the plaintiff's back was removed and misdiagnosed as non-malignant. The plaintiff suffered no further symptoms of cancer until some seven years after the original misdiagnosis. This court distinguished the general rule set forth above on the basis that although the plaintiff had cancer at the time of the misdiagnosis, her injury was not the cancer itself but the subsequent metastasis of those cancerous cells, which the plaintiff alleged would not have occurred had the cancer been properly diagnosed and treated at the time the nevus was originally biopsied. This court then concluded that "[w]hen an injury occurs subsequent to the date of medical treatment, the statute of limitation commences from the date the injury is discovered. *Shessel v. Stroup*, [253 Ga. 56 (316 SE2d 155) (1984)]." Id. at 708 (1).

We do not agree with Mr. Stone that the facts in this case are comparable to those in *Whitaker*, supra. Unlike the plaintiff in *Whitaker*, whose injury (the metastasis of the melanoma) did not manifest itself until *after* the misdiagnosis, Mr. Stone was already suffering from the effects of the tumor at the time he was seen by appellees. Thus, the misdiagnosis of Mr. Stone's condition injured him by allowing his pain and suffering to continue. Because Mr. Stone's injury was the misdiagnosis itself, rather than an injury occurring subsequent to the misdiagnosis, the language he relies upon in *Whitaker* is

inapplicable. Accordingly, we need not address the question whether any potential conflicts exist between the language in *Whitaker* and our recent holding in *Jones v. Lamon*, 206 Ga. App. 842 (426 SE2d 657) (1992) regarding the commencement date for the statute of limitation in OCGA § 9-3-71 (a).

Therefore, because any injury Mr. Stone suffered as a result of Radiology Services and its employees' misdiagnosis occurred in September 1985, we find no error in the trial court's determination that Mr. Stone's suit filed in December 1990 was barred by the statute of limitation in OCGA § 9-3-71 (a). See generally *Jones*, supra. Accord *Surgery Associates v. Kearby*, 199 Ga. App. 716 (405 SE2d 723) (1991). Likewise, Ms. Stone's loss of consortium claim was barred by the four-year statute of limitation in OCGA § 9-3-33.

Contrary to appellants' claim in their amended complaint, there was evidence in the record that Mr. Stone was competent to handle the day-to-day affairs of life prior to his 1988 surgery (e.g., maintained a full-time job, drove his own car, suffered only one incident indicating memory problems as a result of the tumor). Accordingly, the trial court did not err by concluding as a matter of law that OCGA § 9-3-90 did not apply to toll the running of the statute of limitation. See *Hickey v. Askren*, 198 Ga. App. 718, 721-722 (4) (403 SE2d 225) (1991).

Finally, we find no merit in appellants' contention that summary judgment was improper because questions of fact remain whether the statute of limitation on his claim was tolled by fraud. "One of the elements of fraud is that [appellees] know that the representation is false. There is nothing in the record to reflect that [appellees] knew at any time that the treatment or opinion given by [them] was in error, nor is there any evidence that [appellees] fraudulently withheld such information from the patient." (Citations and punctuation omitted.) *Lasoya v. Sunay*, 193 Ga. App. 814, 816 (1) (389 SE2d 339) (1989).

3. As to appellants' claims against appellee M. W. Kilgore II, M.D., a neurologist, and his employer, appellee M. W. Kilgore II, M.D., P.A. (hereinafter collectively referred to as "Kilgore"), the record establishes that based on a referral by Mr. Stone's physician, Kilgore first saw Mr. Stone on October 10, 1985. Kilgore reviewed a copy of the radiological report made by Radiology Services, which Kilgore averred "reported no mass or pressure and was essentially negative except for some cerebellar atrophy." It is uncontroverted that Kilgore did not perform or order the CAT brain scan, that he did not view or examine Mr. Stone's brain scan itself, and that in the course of his neurological practice Kilgore routinely did not examine the actual brain scans of his patients. Kilgore informed Mr. Stone's physician in a letter dated October 14, 1985 that the brain scan "reportedly is negative except showing some cerebellar atrophy" and gave as Kilgore's

diagnostic impression "chronic progressive headache and cerebellar atrophy by C[A]T brain scan."

Kilgore saw Mr. Stone on November 14, 1985 for a reassessment of his continued headache, at which time Kilgore prescribed a pain killer and continued the medication Mr. Stone had already been taking. The record reveals that Kilgore saw Mr. Stone four times after 1985: on February 5, 1986 (at which time Mr. Stone's headaches had decreased by at least 50 percent); on November 19, 1987 (headaches had returned, so Kilgore prescribed another medication and ordered an electroencephalogram, the results of which Kilgore interpreted as being within normal limits for someone of Mr. Stone's age and showing no evidence of destructive process, metabolic derangement, or seizure activity); on January 21, 1988 (at which time Kilgore asked Mr. Stone to keep records of his headaches); and on April 28, 1988 (Mr. Stone's records showed only eight headaches in four months, with only one that was hard to control).

Appellants alleged in their complaint that Kilgore and the other appellees "failed to diagnose and treat" Mr. Stone's tumor. " 'To prevail on a motion for summary judgment (OCGA § 9-11-56), a defendant-movant is required to pierce the allegations of the complaint and to establish as a matter of law that the plaintiff could not recover *under any theory fairly drawn from the pleadings and the evidence.* (Cits.)' [Cit.]" (Emphasis in original.) *Duenas v. Bence,* 174 Ga. App. 80, 82 (2) (329 SE2d 260) (1985). Although appellants assert in their complaint that 1985 was the year in which Kilgore was presented with the opportunity to diagnose the tumor in Mr. Stone's brain, a liberal construction of their complaint does not demand that appellants' claims be limited to that year. Rather, construing the pleadings in favor of appellants, see generally *Green v. Sun Trust Banks,* 197 Ga. App. 804, 807 (4) (399 SE2d 712) (1990), it can be fairly drawn from the complaint and the evidence that appellants' allegation of negligent failure to diagnose Mr. Stone's tumor includes the entire course of Kilgore's treatment of Mr. Stone from October 1985 to April 28, 1988.[1]

Any injury appellants suffered as a result of Kilgore's alleged failure to diagnose and treat Mr. Stone occurred at the latest by April 28, 1988, the day Mr. Stone was last treated by Kilgore. See Division 2, supra. As noted above, appellants' complaint was filed December 11,

---

[1] Although the expert affidavit attached to appellants' complaint set forth only the alleged negligent acts of appellees in 1985, that affidavit does not restrict appellants' claims to that specific time. Plaintiffs need not set forth an exhaustive list of the alleged negligent acts to comply with OCGA § 9-11-9.1 (a), which requires only that the affidavit "set forth specifically *at least one* negligent act or omission claimed to exist and the factual basis for each such claim." (Emphasis supplied.)

1990. Since suit was filed within the four-year limitation period in OCGA § 9-3-33, Ms. Stone's loss of consortium claim was not barred as a matter of law. Accord *Deller v. Smith*, 250 Ga. 157, 158 (1) (a) (296 SE2d 49) (1982). As to Mr. Stone's malpractice claim, under the two-year statute of limitation in OCGA § 9-3-71 (a) the complaint would appear to be untimely filed by almost eight months. However, although we agree with Kilgore that the record is utterly devoid of any evidence of fraud on his part so as to toll the statute of limitation pursuant to OCGA § 9-3-96, see *Lasoya*, supra, we agree with appellants that notwithstanding evidence of Mr. Stone's competency to handle the day-to-day affairs of life *prior* to his December 1988 surgery, there is ample evidence in the record to create a question of fact whether *after* his brain surgery and the subsequent radiation treatment Mr. Stone was legally incompetent because of mental disability so as to toll the statute of limitation pursuant to OCGA §§ 9-3-90; 9-3-91 for a period sufficient to render his complaint timely filed. See generally *Chapman v. Burks*, 183 Ga. App. 103 (357 SE2d 832) (1987).

Therefore, the trial court erred by granting summary judgment to Kilgore on his statute of limitation defense. See id. at 107.

*Judgment affirmed in part and reversed in part. McMurray, P. J., concurs. Cooper, J., concurs in the judgment only.*

DECIDED DECEMBER 4, 1992 —
RECONSIDERATION DENIED DECEMBER 16, 1992

*Sutton & Associates, Berrien L. Sutton, Hallman & Associates, Ronald W. Hallman*, for appellants.

*Oliver, Maner & Gray, I. Gregory Hodges, Patricia C. Tanzer, Saalfield, Catlin, Coulson & Etheridge, Harold H. Catlin*, for appellees.