## A00A0812. ANGLIN v. HARRIS et al.
(534 SE2d 874)

JOHNSON, Chief Judge.

Tracy Anglin filed a personal injury action against Larry Harris and his employer, Simbeck, Inc., on October 15, 1998, for injuries allegedly sustained on October 15, 1996, when the tractor-trailer Harris was driving collided with Anglin's car. Harris and Simbeck, Inc. (collectively "Simbeck"), answered in November 1998, alleging that the accident actually occurred on October 14, 1996, and asserting that the two-year statute of limitation expired before the lawsuit was filed. In April 1999, Simbeck moved for summary judgment, which the trial court granted. Anglin appeals. We affirm.

1. Anglin contends that the trial court erred in granting summary judgment when a genuine issue of material fact exists as to the date on which the accident occurred. We disagree.

The date of the accident is material because, if the accident occurred on October 15, 1996, the filing date of October 15, 1998, falls within the limitation period; if the accident occurred on October 14,

---

[2] OCGA § 16-2-20 (b) (3).
[3] See *McWhorter v. State*, 198 Ga. App. 493-494 (1) (402 SE2d 60) (1991).

1996, the suit is time-barred.[1]

In support of its motion for summary judgment, Simbeck submitted a Newnan Hospital admission summary showing Anglin was admitted to the emergency room and treated for accident-related injuries on October 14, 1996. The summary includes an "ACCIDENT DATE" of October 14, 1996. Simbeck also submitted a bill from a radiologist showing a typewritten service date of October 14, 1996, a hospital radiology report showing the date of exam as October 14, 1996, and a hospital bill showing the same admission date. In addition, Simbeck relied on a hospital consent to treatment form signed by Anglin's husband and a witness, on which the date "10-14-96" is handwritten three times. An emergency department medical record also shows a treatment date of October 14, 1996; the date appears in both typed and handwritten form. A typewritten emergency room note shows the date of visit as October 14, 1996.

Simbeck also presented the affidavit of the officer who arrived on the accident scene. In his affidavit, the officer states that the collision occurred on Monday, October *14*, 1996, contrary to his erroneous entry on a written police report showing the incident occurred on Monday, October *15*, 1996.

In opposition to Simbeck's motion for summary judgment, Anglin relied on the written accident report as originally prepared by the police officer, in which he indicates that the accident occurred on Monday, October 15, 1996. Anglin also relies on her own affidavit and her deposition in which she states that she is "sure" the accident occurred on October 15, which she says was a Monday, Tuesday or Wednesday and that the medical records and the officer's affidavit are all wrong.

When a moving party makes a prima facie showing that it is entitled to judgment as a matter of law, the opposing party must come forward with rebuttal evidence at that time or suffer judgment against her; the adverse party may not rest on mere allegations or denials, but her response must set forth specific facts showing there is a genuine issue for trial.[2]

Simbeck met its burden of showing that the accident occurred on October 14, 1996. Anglin, on the other hand, failed to meet her burden of showing that it happened on October 15, 1996. Despite her conclusory statement that she is sure of the date, she equivocated on this issue. In her affidavit, she says the accident happened on Octo-

---

[1] See *Davis v. DESA Intl.*, 209 Ga. App. 318 (433 SE2d 410) (1993) (personal injury action filed on second anniversary of injury not time-barred); *Weems v. Munson Transp.*, 210 Ga. App. 766 (1) (437 SE2d 640) (1993) (action filed one day after second anniversary barred).

[2] *Kem Mfg. Corp. v. Sant*, 182 Ga. App. 135, 141 (5) (355 SE2d 437) (1987).

ber 15, then adds "I do not know if it was a Monday, Tuesday or Wednesday. But I do remember it being October 15, 1996. The calendar may show this to be Tuesday, but I do not agree." On deposition, when asked why she insists that the accident occurred on October 15, she simply replies "That's the date it was." When asked what day of the week that was, she answers "I *believe* it was a Monday, Monday or Tuesday." When told that the officer's report indicates the accident happened on a Monday and asked whether she would dispute that, Anglin replies that she would not. And when asked "If it occurred on a Monday, would you concede that it occurred on October 14th, 1996?", she responded "Yes, sir."

Similarly, when asked on deposition why he maintains the accident occurred on October 15, 1996, Anglin's husband states "It was just — It was the 15th." The husband adds that his statement is based on the police report. When asked what day of the week that was, he replies, "Monday or Tuesday. Monday, I believe. Tuesday. It was the first of the week." Her husband, therefore, was also unsure of when it happened. We note that he bases his date of October 15 solely on the police report, but the officer who authored it has since testified that the date he wrote on the report is incorrect.

Thus, Anglin's own evidence is, at best, equivocal as to the day and date of the accident. The testimony of a respondent on summary judgment is to be construed against her where it is self-contradictory, vague, or equivocal.[3] In light of this principle, and considering the unequivocal medical records showing October 14 as the accident date and taking judicial notice of the calendar indicating that the second Monday in October 1996 was the fourteenth, there is no *genuine* issue of material fact as to when the accident happened. "A shadowy semblance of an issue is not enough to defeat the motion for summary judgment."[4] The trial court correctly concluded that no genuine issue of material fact exists as to the date and that the applicable statute of limitation expired before the action was filed.

2. The only issue remaining for our consideration, therefore, is whether Anglin has presented evidence which would toll the statute. As she points out, the two-year statute of limitation provided by OCGA § 9-3-33 may be tolled where a plaintiff is mentally incompetent to handle her affairs.[5] In order to survive Simbeck's motion for summary judgment, Anglin was required to present some evidence of

---

[3] *Hickey v. Askren*, 198 Ga. App. 718, 722 (4) (403 SE2d 225) (1991).

[4] (Citation and punctuation omitted.) *Owen v. M & M Metro Supply*, 198 Ga. App. 420, 422 (2) (401 SE2d 612) (1991).

[5] See OCGA §§ 9-3-90 (a); 9-3-91; *Chapman v. Burks*, 183 Ga. App. 103 (357 SE2d 832) (1987).

mental disability which would toll the statute of limitation.[6] The test is whether she suffered from such unsoundness of mind or imbecility as to be incapable of managing the ordinary affairs of life.[7]

In support of her position that she was mentally disabled for several days after the accident, Anglin relies on her own affidavit in which she states that she became upset and very depressed after the accident, primarily due to her concern about her 16-month-old daughter, who was in the car at the time the tractor-trailer struck their car but was not physically injured. We note that Anglin, who was admitted to the emergency room complaining of arm, head, neck, and back pain, was diagnosed as having no acute injuries and was discharged about an hour later in good condition.

In her deposition given in February 1999, Anglin testifies that starting the evening of the accident she "just laid in bed" but remarked that she did so because of neck and back pain. She states that she stayed in bed for the next few days as well as a result of the neck and back pain. She adds that she "was just totally out of it *with the pain* and everything that happened," that she slept and "sometimes just laid there *and hurt*." When asked why she was "out of it," Anglin responds "[b]ecause of the pain being so severe." She agrees that her husband suggested going to see a doctor during those first few days but that they mutually decided to wait several days to see how she was feeling. She further agrees that she was unable to take care of her children at that time *as a result of the pain* in her neck and back.

In an affidavit executed in May 1999 and filed in response to Simbeck's motion for summary judgment, Anglin avers that she was delirious, confused, disoriented, and "in a daze" for three or four days after the accident. She says that she stayed in bed on the evening of the accident primarily because of her mental condition. Anglin says she was unable to take care of her children or perform any household chores and that she was worried and "completely out of it." Anglin says she "could not understand what was going on" and "could not understand what [my husband] was relating to me."

When asked if she was mentally incapacitated during this time, Anglin replies that she was "totally out of it. Didn't know what was going on." She avers that she sought no treatment for mental incapacity. She also states that she knew where she was and knew who her husband, sister, and children were, but that she was unable to handle her normal activities because of the pain in her neck and back.

---

[6] See *Woodward v. Sickles*, 239 Ga. App. 505, 506 (521 SE2d 211) (1999).

[7] *Jacobs v. Littleton*, 241 Ga. App. 403, 406 (3) (b) (525 SE2d 433) (1999); *Hickey*, supra at 721 (4).

In his deposition, Anglin's husband states that on the evening after the accident Anglin became "[d]isoriented, really out of it." He states that she stayed in bed for three days and was unable to do anything around the house. He says she was not speaking clearly and not making sense. As examples, he states that he would tell her to take a shower and she would reply that she did not need a shower. Or he would tell her to get out of bed, and she would remark that she was staying in bed. Or he would offer her food, and she would respond that nothing sounded good to eat. He adds that he was concerned about Anglin's mental state but that he did not take her to a mental health professional because they had no means of paying for treatment.

In contrast, Simbeck has pointed to evidence indicating that Anglin was not mentally incapacitated after the accident. For example, Simbeck notes that Anglin was able to give an insurance adjuster a statement upon leaving the hospital after the accident and she was able to tell her husband the details of the collision on the same day. Simbeck also points to evidence suggesting that her inactivity during the days following the collision was due to physical pain rather than any mental incapacity and correctly points out that only mental, not physical, disability tolls the statute.[8]

Anglin bore the burden of proving the mental incapacity which she alleges tolled the running of the statute.[9] The evidence in this case does not establish a tolling of the statute.

This court recently decided a nearly identical case. In *Walker v. Brannan*,[10] the plaintiff filed a personal injury action about two weeks beyond the limitation period. In her deposition, the plaintiff alleged physical injuries and made no mention of any mental incapacity. Then, after the defendant moved for summary judgment based on the running of the statute of limitation, the plaintiff filed an affidavit claiming she was mentally incapacitated for 20 days after the accident. In a whole court decision, we held that the plaintiff could not extend the statute of limitation by simply filing a belated and conclusory self-serving affidavit which contradicted the plain import of her deposition testimony. We agree with *Walker* and find it controlling here.

As the majority points out in *Walker*, OCGA § 9-3-90 serves the legitimate and laudable purpose of protecting those who are in fact legally incompetent due to mental illness or disability. At the same time, OCGA § 9-3-33 promotes the legitimate public policy goal of promoting justice and furthering the certainty of time limitations

---

[8] *Chapman*, supra at 107 (2).
[9] See *Jacobs*, supra.
[10] 243 Ga. App. 235 (533 SE2d 129) (2000).

while preventing unfair surprise. The sort of physical pain and discomfort described by Anglin in the instant case, while perhaps very real, are not the mental incapacity contemplated by the tolling statute. Indeed, on deposition Anglin gives a rational explanation for staying in bed after the accident: her physical pain resulted in her not wanting or not being able to get up or do anything, and she and her husband decided to wait a few days to see if her physical condition improved before taking her to see a doctor about the pain. Like the plaintiff in *Walker*, Anglin does not support her position with any medical evidence.[11] We note that the examples Anglin's husband gave of Anglin "not making sense" actually indicate that she did understand what he was saying, was communicating well, and was making decisions during those critical first few days after the accident.

The determination of whether one is mentally incapacitated within the meaning of the tolling statute can be made by the trial court as a matter of law.[12] The trial court was authorized to find that the evidence relied upon by Anglin does not demonstrate that she was mentally incompetent as required by the statute.[13] Because the record presents no genuine issue of material fact as to Anglin's mental competence, the grant of summary judgment was proper.[14]

*Judgment affirmed. Phipps, J., and McMurray, Senior Appellate Judge, concur.*

DECIDED MAY 22, 2000.

*Charles E. Muskett*, for appellant.
*Carter & Ansley, Keith L. Lindsay*, for appellees.

---

[11] We also find it noteworthy that in both *Walker* and the instant case, the plaintiffs were represented by attorney Charles E. Muskett. In both cases, the statute of limitation expired days before the suit was filed. And in both cases, after the defendant raised the statute of limitation defense, the plaintiff testified that she suffered from mental incapacitation for a number of days after the accident. In fact, both plaintiffs said they were "delirious" and they either "were not aware of the goings on" or "could not understand what was going on." Coincidentally, both plaintiffs were "out of it" just long enough to cover the amount of time by which the attorney missed the filing deadline. We also note that in this case, Anglin retained attorney Muskett on December 22, nearly 22 months before the statute expired. It is not clear how long Muskett had the case in *Walker*.

[12] *Carter v. Glenn*, 243 Ga. App. 544 (533 SE2d 109) (2000).

[13] See *Jacobs*, supra; *Charter Peachford &c. v. Kohout*, 233 Ga. App. 452, 460 (d) (504 SE2d 514) (1998) (physical precedent only); *Whisnant v. Coots*, 176 Ga. App. 724, 726 (337 SE2d 766) (1985).

[14] See *Stone v. Radiology Svcs.*, 206 Ga. App. 851, 855 (3) (426 SE2d 663) (1992).