M.H.D., Plaintiff-Counter-Defendant-Appellant,

v.

WESTMINSTER SCHOOLS, Defendant-Appellee,

John Ferguson, Defendant-Counter-Claimant-Appellee.

No. 97-8039.

United States Court of Appeals,

Eleventh Circuit.

April 16, 1999.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:95-cv-2376-JEC), Julie E. Carnes, Judge.

Before TJOFLAT and DUBINA, Circuit Judges, and KRAVITCH, Senior Circuit Judge.

TJOFLAT, Circuit Judge:

Appellant M.H.D.[1] brought this suit under Title IX of the Education Amendments of 1972[2] ("Title IX") and Georgia tort law against Westminster Schools, Inc. ("Westminster"), and John Ferguson, a teacher, for injuries she sustained on account of a sexual relationship that existed between herself and Ferguson while she was a ninth-grade student at Westminster. Because appellant filed her complaint eleven years after the last sexual incident occurred, the district court held that the statute of limitations barred her claims and granted the defendants summary judgment.[3] We affirm.

I.

---

[1]Due to the sensitive nature of the underlying events in this case, we refer to the children involved in this proceeding by their initials.

[2]Pub.L. No. 92-318, 86 Stat. 235, 373 (1972) (codified as amended at 20 U.S.C. §§ 1681-1688).

[3]As explained in the text, *infra,* this was an alternative holding. The district court also held that it lacked subject matter jurisdiction because Title IX provides no relief against private schools that do not receive "Federal financial assistance," and Westminster's tax-exempt status did not constitute such assistance.

In the 1983-84 school year, appellant was a fourteen-year-old student in the ninth grade at Westminster, a school located in Atlanta, Georgia.[4] During the fall of that year, while walking in the school hallway, appellant saw two of her friends, K.S. and R.K. (both of whom also were ninth graders), reading a letter that Ferguson had written to R.K. The letter expressed Ferguson's desire to pursue R.K. romantically. The girls showed appellant the note.

Soon thereafter, Ferguson lured R.K.—and then K.S.—into a sexual relationship with him.[5] At some point during the fall, the two girls told Ferguson that appellant knew about his relationship with them, and Ferguson replied that he wanted to meet her. Thereafter, appellant began accompanying R.K. and K.S. when they visited Ferguson in his office at Westminster, both during and after school hours.

Ferguson initiated an intimate relationship with appellant during the spring semester. The relationship involved at least four sexual encounters, the last of which occurred before the semester ended in June.[6] Although appellant was alone with Ferguson during the last of these encounters, the other two girls participated in the first three incidents. During each of these meetings, Ferguson led the girls to a secluded place (either on or off Westminster's campus) and then kissed and fondled them.

Although appellant at first was "fascinated" by the attention that Ferguson showed her and the other two girls, she increasingly felt confused and uncomfortable about her relationship with him. According to appellant, she did not know why she felt uncomfortable; all that she knew was that she did not want her

---

[4]Because we are reviewing a grant of summary judgment, we view the facts in the light most favorable to appellant. *See Blue Cross & Blue Shield of Ala. v. Sanders,* 138 F.3d 1347, 1351 (11th Cir.1998).

[5]This relationship consisted of several encounters where Ferguson fondled and kissed the girls. During the spring semester, Ferguson also engaged in sexual intercourse and oral sex with R.K.

[6]Because of the long period of time between these events and the filing of her lawsuit, and the fact that appellant tried to forget what Ferguson did to her, appellant admits that her memory of her encounters with Ferguson is not complete. Consequently, although appellant believes that she probably had other sexual encounters with Ferguson, she has no memory of any encounters beyond these four incidents. Despite her inability to recall all of the details of her relationship with Ferguson, appellant has never forgotten that she had a sexual relationship with Ferguson or that the four encounters she described took place.

2

relationship with Ferguson "to be happening."  Appellant revealed this feeling of discomfort during her second encounter with Ferguson;  when Ferguson began kissing each of the girls, appellant pushed him away and left the group.

At some point during the spring semester, appellant became so upset about her relationship with Ferguson that she told him and the other two girls that she would no longer participate in their sexual encounters.[7]  After withdrawing from the group, however, appellant discovered that because she had spent so much time with Ferguson, R.K., and K.S., she had become isolated from all of her other friends at Westminster.  Consequently, after one or two weeks, appellant rejoined the group.

The sexual encounters came to an end in June 1984 after K.S.'s father discovered a note that K.S. had written to appellant.  The note indicated that Ferguson had told K.S. he wanted to have sexual intercourse with her.[8]  After K.S.'s father found the note, he confronted K.S., who told him of Ferguson's relationship with her and the other two girls.  K.S.'s father then informed R.K.'s parents of the situation, and they in turn informed the headmaster of Westminster.  Appellant, who had been afraid to tell anyone about her relationship with Ferguson for fear of getting into trouble, finally told her parents what had happened.  They also contacted the headmaster. The headmaster then confronted Ferguson about his relationship with the three girls, and Ferguson admitted that he had an affair with R.K. and K.S. (but not appellant).  Ferguson then resigned from Westminster.

Although her relationship with Ferguson was over, appellant was just beginning to experience the psychological harm that resulted from his abuse.  Appellant knew that Ferguson's conduct was inappropriate, but contends that she did not fully comprehend how wrong it was, or that it had injured her.  Although

---

[7]The record does not indicate the specific point in appellant's relationship with Ferguson that she tried to withdraw from the group;  the record suggests, however, that this occurred after her second encounter with Ferguson.

[8]Ferguson also told appellant that he wanted to have intercourse with her.

3

appellant agreed with her parents that she should receive counseling about her relationship with Ferguson, neither appellant nor her parents followed up on the idea.

Appellant returned to Westminster in the fall of 1984, entering the tenth grade. During her eleventh and twelfth grade years she became depressed, her grades dropped, and she ceased almost all extracurricular activities. After graduating in June 1987, appellant took a year off before attending college; she felt "duped, betrayed and taken advantage of" by Ferguson, and "needed some time off." Appellant began seeing a therapist in 1989 to seek treatment for her depression, and by 1993 Ferguson's sexual abuse had become a regular topic of discussion in her therapy sessions. During the spring of 1993, appellant also wrote an essay for her college English class about her relationship with Ferguson. In the essay, appellant described herself as a victim of sexual abuse, which she defined as "any sexual activity or experience imposed on a child which results in emotional, physical, or sexual trauma."[9]

Appellant filed this lawsuit against Westminster and Ferguson on September 21, 1995. Her complaint contained one federal law claim and four state law claims. The federal claim was brought under Title IX. It alleged that Ferguson's abuse was sufficiently severe and pervasive to constitute a hostile and abusive school environment and thus to render Westminster liable for money damages. Although Title IX only applies to educational programs that receive "Federal financial assistance,"[10] appellant's complaint asserted that Westminster was subject to Title IX because its federal tax-exempt status constituted such assistance.

---

[9]Appellant described her abuse at the hands of Ferguson in this essay as follows:

> I always referred to it as "this thing that happened my first year in high school." I never saw myself as a victim of sexual abuse, but as I read through an old training manual for the Women's Rape Crisis Center in Burlington I saw myself in its pages.
>
> I was one of three girls known to me to have been abused by one of the teachers at my high school.

[10]Title IX states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance...." 20 U.S.C. § 1681(a) (1994).

4

The state law claims sought compensatory and punitive damages against Westminster and Ferguson for assault, battery, and intentional infliction of emotional distress. The complaint also sought compensatory and punitive damages against Westminster for negligence because it failed to take action to end the abuse. Appellant claimed that the district court had jurisdiction over her Title IX claim pursuant to 28 U.S.C. §§ 1331 and 1343 (1994), and that it had supplemental jurisdiction to hear her state law claims under 28 U.S.C. § 1367 (1994).

Following discovery, both defendants moved for summary judgment. Westminster contended that Title IX could afford appellant no relief because its tax-exempt status did not constitute "Federal financial assistance" within that statute's meaning, and, alternatively, that appellant's claims were time-barred. Westminster suggested that if the court agreed that Title IX could provide no relief, it could avoid the statute of limitations issues by granting summary judgment on the Title IX claim and declining to exercise its supplemental jurisdiction over the state law claims. Ferguson, who was not amenable to suit under Title IX, *see Does v. Covington County Sch. Bd. of Educ.,* 930 F.Supp. 554, 566 (M.D.Ala.1996), contended that he was entitled to summary judgment on the state law claims because they were time-barred.

On December 17, 1996, the district court entered an order on the defendants' motions for summary judgment. Although Westminster had not suggested that the court lacked federal question jurisdiction to entertain appellant's Title IX claim, the court's order, after concluding that Title IX could provide appellant no relief, "dismissed" her claim for want of subject matter jurisdiction. In the court's view, Westminster's federal tax exemption did not constitute "Federal financial assistance" under Title IX.

The court's order also granted the defendants' motions for summary judgment on the ground that all of appellant's claims were barred by the statute of limitations. The court agreed with the defendants that appellant's claims were governed by Georgia's two-year statute of limitations for personal injury actions and

5

that the two year period began running on May 30, 1987, when appellant reached the age of majority.[11]

Because appellant did not file suit until September 21, 1995, eight years after the statute of limitations began

to run, the court held that her claims were time-barred.

We agree with the district court that the statute of limitations bars appellant's claims, and therefore

affirm its grant of summary judgment in favor of the defendants.[12]

II.

---

[11]Under Georgia law, when a claim accrues while the plaintiff is a minor, the statute of limitations is tolled until the plaintiff reaches the age of majority. *See* O.C.G.A. § 9-3-90(a) (Supp.1998).

[12]Although we affirm the district court's judgment, we note that the court incorrectly concluded that it lacked subject matter jurisdiction over this case. When a party claims a right that arises under the laws of the United States, a federal court has jurisdiction over the controversy. If the court concludes that the federal statute provides no relief, as is true in this case, then it properly dismisses that cause of action for failure to state a claim under Fed.R.Civ.P. 12(b)(6) or 12(c). *See Bell v. Hood,* 327 U.S. 678, 681-82, 66 S.Ct. 773, 775-76, 90 L.Ed. 939 (1946); *McCallum v. City of Athens,* 976 F.2d 649, 650 n. 1 (11th Cir.1992). Dismissal for want of subject matter jurisdiction is inappropriate in such an instance unless the federal claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell,* 327 U.S. at 682-83, 66 S.Ct. at 776.

Here, appellant's allegation that tax-exempt status constitutes "Federal financial assistance" is neither immaterial nor wholly frivolous. The crux of appellant's argument is that exemption from federal taxes produces the same result as a direct federal grant—Westminster possesses funds that otherwise would belong to the Government. Thus, appellant contends, a direct grant and a tax exemption should be treated the same; because a grant constitutes "Federal financial assistance" under Title IX, tax-exempt status also should satisfy this element of the statute.

At least one court has held that a tax exemption constitutes "Federal financial assistance," albeit in the context of Title VI, not Title IX. *See McGlotten v. Connally,* 338 F.Supp. 448, 461 (D.D.C.1972); *see also Fulani v. League of Women Voters Educ. Fund,* 684 F.Supp. 1185, 1192 (S.D.N.Y.1988) (concluding that defendant received "Federal financial assistance" within the meaning of both Title VI *and Title IX* because it received both direct grants and tax-exempt status). Because Title IX was modeled after Title VI, however, *McGlotten* provides support for appellant's position. *See Grove City College v. Bell,* 465 U.S. 555, 566, 104 S.Ct. 1211, 1218, 79 L.Ed.2d 516 (1984).

We conclude that appellant's Title IX claim is neither immaterial nor wholly frivolous, and therefore, that the district court had jurisdiction to entertain this controversy. Because we conclude, however, that the statute of limitations bars this suit, we do not reach the merits of any of appellant's claims. We therefore express no view on the question whether a federal tax exemption actually constitutes "Federal financial assistance" under Title IX.

A.

Georgia's statute of limitations for personal injury actions mandates that "[a]ctions for injuries to the person ... be brought within two years after the right of action accrues." O.C.G.A. § 9-3-33 (1982). We agree with the district court that this statute governs appellant's claims.[13]

Under Georgia law, section 9-3-33 is the general statute of limitations for personal injury claims, covering "not only injuries to the physical body, but every other injury, for which an action may be brought, done to the individual, and not to his property." *Hutcherson v. Durden,* 113 Ga. 987, 39 S.E. 495, 497 (1901) (discussing an antecedent version of the statute). Appellant's causes of action for assault, battery, intentional infliction of emotional distress, and negligence all constitute claims of injury to the individual, and therefore are governed by section 9-3-33. *See Alpharetta First United Methodist Church v. Stewart,* 221 Ga.App. 748, 472 S.E.2d 532, 533 (Ga.Ct.App.1996) (concluding in a sexual abuse case that section 9-3-33 is the applicable statute of limitations for claims of assault, battery, intentional infliction of emotional distress, and negligence).

Section 9-3-33 also applies to appellant's Title IX claim. Because Congress did not provide a statute of limitations for Title IX, the "most closely analogous" statute of limitations under state law governs the federal cause of action. *Reed v. United Transp. Union,* 488 U.S. 319, 323, 109 S.Ct. 621, 625, 102 L.Ed.2d 665 (1989). Courts generally agree that a Title IX claim for damages is most closely analogous to a common law action for personal injury; therefore, the statute of limitations for personal injury actions controls. *See Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 729 (6th Cir.1996) (stating that the federal courts of appeals "have uniformly applied the state personal injury limitations period" to Title IX claims). Here, the injury for which appellant seeks the remedy of damages under Title IX—sexual abuse—is an injury to her

---

[13]We review the district court's application of the statute of limitations and its subsequent grant of summary judgment in favor of the defendants *de novo. See Technical Coating Applicators, Inc. v. United States Fidelity & Guar. Co.,* 157 F.3d 843, 844 (11th Cir.1998); *Therrell v. Georgia Marble Holdings Corp.,* 960 F.2d 1555, 1561 (11th Cir.1992). In so doing, we apply the same legal standards as the district court. *See Technical Coating Applicators,* 157 F.3d at 844.

as an individual. *See Long v. Marino,* 212 Ga.App. 113, 441 S.E.2d 475, 476 (Ga.Ct.App.1994) (applying

section 9-3-33 to a case involving sexual abuse). We therefore conclude that appellant's claim is regulated

by Georgia's two-year statute of limitations for personal injury.[14]

---

[14]Although Georgia has a specific five-year statute of limitations for childhood sexual abuse, we disagree with appellant that this statute, not the two-year personal injury statute of limitations, applies to her claims. This statute provides:

> (a) [T]he term "childhood sexual abuse" means any act committed by the defendant against the plaintiff which act occurred when the plaintiff was under the age of 18 years and which act [under Georgia law constitutes] rape; ... sodomy [or] aggravated sodomy; ... statutory rape; ... child molestation [or] aggravated child molestation; ... enticing a child for indecent purposes; ... pandering; ... pandering by compulsion; ... solicitation of sodomy; ... incest; ... *sexual battery;* ... [or] aggravated sexual battery....
>
> (b) Any civil action for recovery of damages suffered as a result of childhood sexual abuse shall be commenced within *five* years of the date the plaintiff attains the age of majority.

O.C.G.A. § 9-3-33.1 (Supp.1997) (emphasis added). According to appellant, because Ferguson's abuse constitutes sexual battery, this five-year statute of limitations governs her suit.

This statute, however, was not adopted until 1992; the legislation which enacted it states: "No action for childhood sexual abuse which, prior to July 1, 1992, has been barred by the provisions of Title 9 [regarding statutes of limitations], shall be revived by this Act." 1992 Ga. Laws 2473, § 2. Because we conclude that appellant's claims were time-barred before July 1, 1992, *see infra* part II.B, this statute does not govern her suit.

We also note that appellant's causes of action would be time-barred even if she *did* receive the benefit of this five-year statute of limitations. The statute provides that the five year limitations period begins to run when the plaintiff reaches the age of majority, which for appellant, occurred on May 30, 1987. Appellant did not file her suit until September 21, 1995, well over five years later. Thus, even under the statute of limitations for childhood sexual abuse, the limitations period expired before appellant filed her suit.

Appellant contends that her claims are not time-barred under the five-year statute of limitations because the "discovery rule" applies; this rule states that the statute of limitations does not begin to run until the plaintiff knows the cause of her injury. *See King v. Seitzingers, Inc.,* 160 Ga.App. 318, 287 S.E.2d 252, 254 (Ga.Ct.App.1981). (For a more detailed discussion of the discovery rule, *see infra,* part II.B.) Appellant contends that she first discovered that she was injured by Ferguson's conduct in 1995, and thus the limitations period did not commence to run until that time.

The discovery rule, however, does not apply to claims brought under section 9-3-33.1. The primary purpose of the section was to increase the limitations period for victims of childhood

B.

Having concluded that the two-year statute of limitations for personal injury claims governs appellant's causes of action, we next determine the date on which the limitations period began to run. The Supreme Court of Georgia has stated:

> The test to be applied ... is ... whether the act causing the damage is in and of itself an invasion of some right of the plaintiff.... [I]f the act causing such subsequent damage is of itself unlawful in the sense that it constitutes a legal injury to the plaintiff, and is thus a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, however slight the actual damage then may be.

*Hoffman v. Insurance Co. of N. Am.,* 241 Ga. 328, 245 S.E.2d 287, 289 (1978) (quoting *Barrett v. Jackson,* 44 Ga.App. 611, 162 S.E. 308, 309 (Ga.Ct.App.1932)). Thus, the statute of limitations begins to run when the plaintiff's cause of action becomes legally cognizable. In this case, the sexual abuse perpetrated by Ferguson itself was unlawful and constituted an immediate legal injury to appellant. Consequently, appellant's causes of action were legally cognizable in the spring of 1984.

Under Georgia law, the statute of limitations is tolled until the plaintiff reaches the age of majority. *See* O.C.G.A. § 9-3-90(a) (Supp.1998). Because appellant was only fourteen years old in the spring of 1984, the limitations period did not begin to run until May 30, 1987, the day on which she turned eighteen.

Appellant seeks to toll the statute of limitations even further. She contends that the "discovery rule" applies in this case, and therefore that the limitations period did not commence to run until 1995. Under the discovery rule, the statute of limitations does not begin to run until the plaintiff knows (or reasonably should know) the cause of her injury. *See King v. Seitzingers, Inc.,* 160 Ga.App. 318, 287 S.E.2d 252, 254

---

sexual abuse. Although the original version of this statute adopted the discovery rule to accomplish this goal, some members of the Georgia legislature opposed adopting the rule because they believed the uncertainty of such a long limitations period was unfair to potential defendants. As a compromise, the legislature replaced the discovery rule with the five-year limitations period that section 9-3-33.1 now features. *See* Jami Philpott, Legislative Review, 9 Ga. St. U.L.Rev. 154, 155-57 (1992). Thus, the Georgia legislature clearly did not intend the discovery rule to apply to claims governed by section 9-3-33.1.

(Ga.Ct.App.1981).[15] Here, appellant contends, she knew that she was severely depressed as early as 1989; however, because she did not understand until 1995 that there was a causal connection between Ferguson's conduct and her emotional and psychological injuries, the statute of limitations was tolled until that time.

We disagree that the discovery rule applies in this case. Although courts in other jurisdictions have concluded that the discovery rule applies to all cases involving childhood sexual abuse, *see, e.g., Osland v. Osland,* 442 N.W.2d 907, 909 (N.D.1989), the Georgia Supreme Court has explicitly limited the discovery rule's application "to cases of bodily injury which develop only over an extended period of time." *Corporation of Mercer Univ. v. National Gypsum Co.,* 258 Ga. 365, 368 S.E.2d 732, 733 (1988) (quoting *Lumbermen's Mut. Cas. Co. v. Pattillo Constr. Co.,* 254 Ga. 461, 330 S.E.2d 344, 348 (1985) (Weltner, J., dissenting)). Thus, in Georgia the discovery rule only applies to cases involving "continuing torts," where the plaintiff's injury developed from prolonged exposure to the defendant's tortious conduct. *See Bitterman v. Emory Univ.,* 175 Ga.App. 348, 333 S.E.2d 378, 379 (Ga.Ct.App.1985) (stating that the discovery rule "was adopted in Georgia to aid a plaintiff suffering a continuing tort," and defining a continuing tort as "one inflicted over a period of time").

The discovery rule has been applied, for example, in a case involving plaintiffs who were injured by six years of exposure to toxic chemicals that the defendant sprayed in their house. *See Andel v. Getz Servs., Inc.,* 197 Ga.App. 653, 399 S.E.2d 226, 228 (Ga.Ct.App.1990). In another case, the court concluded that the discovery rule applied where the plaintiff suffered from lead poisoning caused by fumes he inhaled during the five years that he worked in the defendant's battery treatment plant. *See King,* 287 S.E.2d at 254-55.

Appellant's injuries were not caused by a continuous tort. In contrast to the plaintiffs' injuries in *Andel* and *King,* which developed from several years of frequent (even continuous) exposure to the defendant's tortious conduct, appellant's injuries in the present case are the result of four instances of abuse,

---

[15]The rule is designed to prevent the unfairness that would result from the running of the limitations period before the plaintiff is aware of the facts underlying her cause of action. *See Hammer v. Hammer,* 142 Wis.2d 257, 418 N.W.2d 23, 26 (Wis.Ct.App.1987).

10

all of which occurred within a few months.  We conclude that appellant's injuries did not develop over an extended period of time, and therefore that the discovery rule does not apply to her claims.  *See. Hickey v. Askren,* 198 Ga.App. 718, 403 S.E.2d 225, 228 (Ga.Ct.App.1991) (concluding that plaintiff's injury was not caused by a continuous tort where her injury resulted from two sexual encounters with her doctor that occurred over a period of several months).

Furthermore, even if the discovery rule were to apply to appellant's claims, her claims still would be time-barred because she discovered the cause of her injuries more than two years before she filed her lawsuit.  There was ample evidence that appellant understood as early as 1984, well over two years before she filed suit, that Ferguson's abusive conduct had injured her.  In 1984, appellant acknowledged that what Ferguson did to her was wrong, and agreed with her parents that she should receive counseling about her relationship with him.  Appellant would not have thought she needed counseling unless she understood that she suffered at least some degree of psychological injury.  Appellant's psychiatrist even testified that while appellant was still in high school she understood "[o]n some level" that Ferguson had caused her pain and suffering.[16]

The clearest indication that appellant understood the fact and cause of her injuries, however, was the essay she wrote for her college English class in the spring of 1993.[17]  In this essay, appellant characterized herself as a victim of sexual abuse, which she defined as "any sexual activity or experience imposed on a child which results in *emotional, physical, or sexual trauma.*" (emphasis added).  This essay leaves no room

---

[16]Although appellant may not have understood the *extent* of the harm caused by Ferguson's abuse until much later, the statute of limitations began to run under the discovery rule as soon as she understood that the abuse caused some injury, no matter how minor.  *See Hickey,* 403 S.E.2d at 227-28.

[17]There are indications, other than those that manifested themselves in 1984 and 1993, that appellant knew that Ferguson's conduct had injured her.  Appellant stated, for example, that in 1987 she felt "duped, betrayed and taken advantage of" by Ferguson.  Furthermore, she stated that in 1991 she was angry at Ferguson for having an "inappropriate relationship" with her, and that she was beginning to understand that as a 14 year old she was incapable of *choosing* to be intimate with him;  instead he had used his position of power to manipulate her into engaging in a sexual relationship with him.  These statements are indications that appellant understood—at least on some level—that Ferguson abused her.

11

for doubt that by the spring of 1993 appellant knew she had suffered injury—emotional, physical, or sexual—at Ferguson's hands. Because appellant filed her lawsuit more than two years after she wrote this essay, her suit would be time-barred even if the discovery rule applied.

III.

We conclude that the two-year limitations period commenced to run on appellant's eighteenth birthday, May 30, 1987. Because appellant filed her suit more than two years after this date, the statute of limitations bars all of appellant's claims. The district court's grant of summary judgment in favor of the defendants is therefore

AFFIRMED.