S97G0523. PORQUEZ v. WASHINGTON et al.
S97G0525. CLARK v. WASHINGTON et al.
S97G0527. CROSS v. WASHINGTON et al.
(492 SE2d 665)

HINES, Justice.

We granted certiorari to the Court of Appeals to examine questions raised by its decision to reverse the grants of summary judgment to defendant physicians Porquez, Clark, and Cross in this action for medical negligence. See *Washington v. Ga. Baptist Med. Center*, 223 Ga. App. 762 (478 SE2d 892) (1996). We consider (1) whether the Court of Appeals correctly interpreted *Hewett v. Kalish*, 264 Ga. 183 (442 SE2d 233) (1994), to allow the plaintiff to amend his expert's affidavit; (2) if the interpretation was correct, whether the Court of Appeals erred when it determined that the amended affidavit was timely filed, in the absence of the trial court having made such a determination; and (3) whether the Court of Appeals erred when it failed to address an alternate ground supporting the entry of summary judgment, when the trial court did not state the basis on which summary judgment was awarded.

The facts are detailed in the opinion of the Court of Appeals. D'Arcy Washington was shot in the chest and shoulder area. Because of the severity of the wound, emergency medical technicians at the scene applied military anti-shock trousers (MAST), which force blood from the legs to the trunk in order to maintain blood flow to the vital organs. Initially Washington was taken to Walton Medical Center where Dr. Jose Porquez and others determined that Washington should be transported by helicopter to the trauma facility at Georgia Baptist Medical Center in Atlanta. The MAST trousers were deflated shortly after Washington's arrival at Georgia Baptist, and he was prepared for surgery. Dr. Michael Clark performed emergency surgery to repair the vasculature in Washington's shoulder and called in orthopedic surgeon Dr. George Lee Cross to perform a fasciotomy, a

surgical release of pressure, on Washington's left arm. Washington's life was saved, but approximately ten days later, both of his legs had to be amputated due to renal failure, sepsis, and infection.

Washington contends that he lost his legs because his care providers failed to follow appropriate techniques for using the MAST device and subsequently failed to monitor and record compartment pressures in his legs which would have indicated the need for earlier additional fascial release procedures. He filed suit against 27 defendants, including Drs. Porquez, Cross, and Clark. The three doctors filed various motions to dismiss, or in the alternative, for summary judgment, maintaining that Washington's expert affidavit filed with the complaint in accordance with OCGA § 9-11-9.1 was insufficient for failing to set forth any specific negligent acts or omissions committed by the individual defendants and that the care and treatment given to Washington met or exceeded the standard of care of physicians generally under similar conditions and like surrounding circumstances. Dr. Clark also asserted immunity from liability as a voluntary health care provider under OCGA § 51-1-29.1.

The day before the hearing on the doctors' motions, Washington filed an amendment to his expert affidavit. At the motions hearing, the doctors asked the trial court not to consider the amended affidavit because it was untimely. The trial court granted the doctors summary judgment and final judgment pursuant to OCGA § 9-11-54 (b); however, it was not possible to discern from the court's order whether it considered the amended affidavit and on what basis it granted summary judgment. The Court of Appeals reversed the judgments in favor of the three physicians after finding that the amendment to the affidavit was authorized under *Hewett v. Kalish,* supra, and determining de novo that the amended affidavit was timely filed and was sufficient to satisfy the pleading requirements of OCGA § 9-11-9.1 as well as the evidentiary requirements of OCGA § 9-11-56 (e).

1. This Court reiterated in *Hewett* that a § 9-11-9.1 affidavit should be construed most favorably to the plaintiff with all doubts resolved in plaintiff's favor, even if an unfavorable construction of the affidavit may be possible. Id. at 184 (1). Viewed in this manner, plaintiff Washington's initial expert affidavit, without amendment, was sufficient to withstand the threshold challenge that it failed to set forth at least one factually-based act of negligence by Drs. Porquez, Clark, and Cross.[1]

---

[1] In his initial affidavit, Dr. Thompson, a stated specialist in critical care medicine, related in relevant part:

In my opinion, the care and treatment rendered by all of the Defendants to D'Arcy Washington was negligent and was not within the applicable standards of care employed by those rendering emergency, trauma and resuscitative care gener-

Regardless of the need for an amendment to withstand the motions to dismiss, the Court of Appeals correctly concluded that Washington's § 9-11-9.1 affidavit could be amended to present additional evidence of deviation from the standard of care. As this Court determined in *Hewett,* when the expert affidavit is initially filed with the complaint, a plaintiff is allowed to supplement the affidavit if its sufficiency is disputed. Even though *Hewett* dealt with a challenge to the expert's competency, its analysis is not limited to a contest over competency; the reasoning is extant when the challenge is to the sufficiency of the expert's statements regarding negligent acts.

---

ally under similar conditions and like surrounding circumstances. Further, it is my opinion that the deviations in the standard of care caused or contributed to the devastating complications and current medical condition of D'Arcy Washington, including his loss of both lower extremities.

It is my opinion that the loss of this patient's distal lower extremities was a direct consequence of the prolonged inflation of the MAST device without proper monitoring of their effect and without proper periodic deflation, neither of which was within the standard of practice in 1992 or at this time. I believe these events in the lower extremities to have resulted from the application of the MAST device from 0018 to 0415 without monitoring inflation pressures and with only a single attempt to deflate them suddenly at 0115. The MAST device should not have been reinflated with an arterial pressure of 93/60 with fluid repletion in process and a large-bore vascular access having been established. Although the blood pressure noted above may have decreased modestly at the time of the attempted deflation, it was not within the standard of practice of medicine to maintain the MAST device inflation at high or unmonitored pressures throughout such a long period in a young, viable patient such as this whose blood volume was being sustained with saline solutions, whose minimum hemoglobin concentration was only decreased to about half normal, whose blood loss seems to have attenuated after that point, who had multiple vascular access possibilities for administration of fluids, and who had no lower body wound requiring tamponade. The standard of practice is to repeatedly attempt to deflate the MAST device and not to leave them compressing the lower extremities in this type patient over this prolonged period. Further, there were no records documenting the extent of inflation, the exact positioning of the trousers, attempts to ascertain the dorsalis pedis and posterior tibial pulses or to monitor the patient's sensations in the lower extremities. That the patient was sustaining muscle injury was clear from the initial CK level and although this may have been attributed to the shotgun wound itself, there should have been close attention to the lower extremities throughout the period of unusual MAST device inflation.

It is further my opinion that the use of large volumes of crystalloid with minimal colloid in this patient during prolonged use of the MAST device would, in my opinion, predispose the massive fluid accumulation in the muscles further increasing the compartmental syndromes and worsening the problem. . . .

To summarize, in my profession[al] opinion, the care and treatment rendered by . . . [Dr.] Jose Porquez, individually and as [a staff physician] at Walton Medical Center, . . . and the care and treatment rendered by Drs. Michael D. Clark, George Lee Cross, . . . individually and as staff physicians or residents at Georgia Baptist Medical Center, did not meet the standards of care required of emergency medical physicians in that these physicians failed to use the requisite degree of care and skill in providing critical care to D'Arcy Washington in the manner employed by emergency medical physicians generally under similar conditions and like surrounding circumstances.

Because OCGA § 9-11-9.1 constitutes an exception to the general liberality of pleading allowed under the Civil Practice Act, it is to be construed in a manner consistent with the liberality of the Act so long as such a construction does not detract from the purpose of § 9-11-9.1, which is to reduce the filing of frivolous malpractice suits. *Gadd v. Wilson &c.*, 262 Ga. 234, 235 (416 SE2d 285) (1992). Permitting the plaintiff to amend the expert affidavit in order to meet the requirement that it set forth at least one claimed negligent act or omission by each defendant and its factual basis does not defeat the purpose of the statute, but instead helps to insure that the complaint is not frivolous. The recent amendment of OCGA § 9-11-9.1[2] affirms the legislative intent that a plaintiff have a broad right to cure by amendment an allegedly defective affidavit accompanying a charge of professional malpractice.[3]

2. The Court of Appeals was also authorized to make a determination regarding the timeliness of the amended affidavit even in the absence of a ruling by the trial court on the issue. This is so because in assessing whether the trial court properly granted summary judgment to the defendant physicians, the Court of Appeals was to review the record de novo, construing the evidence and the inferences from it strongly in favor of the nonmoving party. *Lane v. Spragg*, 224 Ga. App. 606 (481 SE2d 592) (1997); *Denise v. Cannon*, 219 Ga. App. 765, 766 (466 SE2d 885) (1995).

3. However, the Court of Appeals erred when it failed to address the alternative ground of statutory immunity from liability as a voluntary health care provider, raised by Dr. Clark in support of the entry of summary judgment in his favor. If it is not apparent that the trial court relied on an erroneous legal theory, its grant of summary judgment is to be affirmed if it is right for any reason. *Precise v. City of Rossville*, 261 Ga. 210, 211 (3) (403 SE2d 47) (1991); *Huff v. Valentine*, 217 Ga. App. 310, 311 (1) (457 SE2d 249) (1995). See also *In re Lucas*, 260 Ga. 337 (393 SE2d 256) (1990); *Shapiro v. Lipman*, 259 Ga. 85, 86 (377 SE2d 673) (1989); *Simmons v. Boros*, 255 Ga. 524, 525 (341 SE2d 2) (1986). Thus, the Court of Appeals, in its de novo review, should have determined whether the trial court's grant of judgment in favor of Dr. Clark was warranted under OCGA § 51-1-29.1. Therefore, the reversal of judgment for Dr. Clark does not stand, and the case is remanded to the Court of Appeals for further

---

[2] The statute, as amended, was effective July 1, 1997, and applicable to actions filed on or after July 1, 1997.

[3] Subsection (d) provides that if a plaintiff files an affidavit which is alleged to be defective, the plaintiff may cure the alleged defect by amendment pursuant to Code § 9-11-15 within 30 days of service of the motion alleging that the affidavit is defective, and the trial court may, in its discretion and as justice requires, extend the time for filing such an amendment. There is no express limitation on the nature of the alleged defect subject to remedy.

consideration consistent with this opinion.

*Judgment affirmed in part and reversed in part and case remanded. All the Justices concur, except Fletcher, P. J., and Carley, J., who concur in Divisions 2 and 3 and in the judgment. Sears, J., disqualified.*

DECIDED NOVEMBER 17, 1997.

*Harman, Owen, Saunders & Sweeney, H. Andrew Owen, Jr., Merritt M. Wofford,* for appellant (case no. S97G0523).

*Sullivan, Hall, Booth & Smith, Terrence C. Sullivan, Kevin P. Race, David V. Johnson,* for appellant (case no. S97G0525).

*Alston & Bird, Robert D. McCallum, Jr.,* for appellant (case no. S97G0527).

*Zachery & Segraves, J. Ed Segraves, Duvall, McCumber & Doverspike, Jerry D. McCumber, Gleaton, Scofield, Egan & Jones, Frederick N. Gleaton, Jones & Granger, C. Michael Hardman, Long, Weinberg, Ansley & Wheeler, Sidney F. Wheeler,* for appellees.