**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**February 6, 2014**

# In the Court of Appeals of Georgia

A13A1938. FISHER et al. v. GALA et al.

ELLINGTON, Presiding Judge.

Dorian Fisher filed this medical malpractice action in the Superior Court of Fulton County against Vishal Gala, M.D., Regis Haid, M.D., and Atlanta Brain and Spine Care, P.C. (collectively, "the neurosurgeons").[1] The neurosurgeons moved to dismiss the complaint, averring that the physician who gave the affidavit submitted with Fisher's complaint was not competent to testify regarding the neurosurgical care at issue and, therefore, that the affidavit was defective under OCGA § 9-11-9.1. Fisher filed an amended complaint along with the affidavit of a board-certified neurosurgeon. After a hearing on the neurosurgeons' motion to dismiss, the trial court

---

[1] In the same action, Fisher's wife, Michelle, asserted a claim for loss of consortium. The trial court's order applied to her claim as well, and she joins in this appeal.

ruled that Fisher failed to show that the original affiant-physician was competent to testify and, therefore, that the affidavit was defective. In addition, the trial court held that Georgia law does not authorize a plaintiff to cure such a defect by filing an amended complaint with the affidavit of a different expert. Based on these determinations, the trial court granted the neurosurgeons' motion to dismiss Fisher's complaint. Fisher appeals, and, for the reasons explained below, we reverse.

The following facts are relevant to this appeal. On July 10, 2012, Fisher filed his complaint against the neurosurgeons. Fisher claimed that he sought treatment after he sustained a back injury in March 2010. After diagnostic testing, Fisher's initial treating physicians diagnosed a possible intradural spinal cord tumor. Fisher sought a second opinion with Dr. Gala, who also diagnosed an intradural spinal cord tumor, specifically, a schwannoma. Dr. Gala recommended a laminectomy at the L5-S1 level of Fisher's spine and removal of the suspected schwannoma. Dr. Gala and Dr. Haid performed the surgery on July 13, 2010. According to Fisher, the surgery revealed no schwannoma at L5-S1, although the neurosurgeons found a bundle of clumping nerve roots consistent with arachnoiditis, and they then explored the S1-S2-S3 level. Still finding no schwannoma, the neurosurgeons explored the dura and, finding no lesion, patched the dura and ended the surgery. In his claim for medical malpractice, Fisher

alleged that the neurosurgeons were negligent in diagnosing him with a schwannoma rather than arachnoiditis, that they performed unnecessary and suboptimal neurosurgical procedures (lumbar laminectomy, durotomy, and intradural exploration), and that, as a result of their negligence, he suffered serious complications and permanent disabilities.

With his initial complaint, Fisher filed the affidavit of James Rogan, M.D., who opined that the neurosurgeons violated the standard of care in failing to provide a proper diagnosis of Fisher's condition and in performing an unnecessary and suboptimal surgery which revealed no intradural tumor and which caused post-surgical complications and permanent disabilities. With regard to the basis of his knowledge in performing the procedures, diagnosing the conditions, or rendering the treatments at issue, Dr. Rogan averred that he is board-certified by the American Board of Family Practice, that at least 80 percent of his general practice is devoted to the care of disabled patients and those with neurological disabilities, and that he is familiar with and has personal knowledge of the standard of skill exercised by physicians generally under the same conditions and like surrounding circumstances as those presented by Fisher.

On August 9, 2012, the neurosurgeons filed a motion to dismiss, challenging Dr. Rogan's competency to testify concerning the neurosurgical care at issue. Fisher filed his amended complaint, with the affidavit of Michael Dogali, M.D., on September 7, 2012. Dr. Dogali opined that, during the July 13, 2010 surgery, the neurosurgeons were negligent in failing to protect the nerves of the cauda equina sufficiently and that, as a result, irreversible nerve injuries occurred during the surgery. Dr. Dogali's affidavit showed that he was a board-certified neurosurgeon and that, at the time of the neurosurgeons' alleged negligence, he had been regularly engaged in the active practice of neurosurgery for at least three of the preceding five years, including performing lumbar intradural surgical procedures and otherwise providing the type of care at issue.

As noted above, in granting the neurosurgeons' motion to dismiss, the trial court ruled that a plaintiff cannot comply with OCGA § 9-11-9.1 by filing with a medical malpractice complaint an affidavit given by an expert who is not competent to testify under the applicable standard and then cure such a deficiency by filing an amended complaint with an affidavit given by another expert who is competent to testify. Because this issue is a legal question, not one involving an exercise of the trial court's discretion, our review is de novo, and we view the pleadings in the light most

4

favorable to Fisher, resolving any doubts in his favor. See *Ndlovu v. Pham*, 314 Ga. App. 337, 338 (723 SE2d 729) (2012); *Craigo v. Azizi*, 301 Ga. App. 181, 183-184 (687 SE2d 198) (2009).[2]

Because Fisher's complaint raised a claim for professional malpractice against medical doctors and against a licensed health care facility alleged to be liable based upon the doctors' actions, OCGA § 9-11-9.1 (a) required him "to file with the complaint an affidavit of an expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim." See *Jensen v. Yong Ha Engler*, 317 Ga. App. 879, 881 (733 SE2d 52) (2012); OCGA § 9-11-9.1 (a) (1), (a) (3), (g) (11) (effective July 1, 2007). At the relevant time, "[t]he standard for determining an expert's competence to testify [was] governed by [former] OCGA § 24-9-67.1, and the statute applie[d] to affiants under OCGA § 9-11-9.1." (Citation, punctuation, and footnote omitted.)

---

[2] See *Hewett v. Kalish*, 264 Ga. 183, 184 (442 SE2d 233) (1994) (When an affidavit shows on its face that the affiant is competent to testify under the applicable standard, but a defendant believes that the plaintiff's expert is in fact incompetent, "the defendant may attempt to resolve this discrepancy at [an evidentiary] hearing under OCGA § 9-11-12 (d).").

*Aguilar v. Children's Healthcare of Atlanta*, 320 Ga. App. 663, 664 (739 SE2d 392) (2013).[3]

In this case, the neurosurgeons' argument that Dr. Rogan was incompetent to testify regarding the neurosurgical care at issue was well taken.[4] If a plaintiff files an

_____

[3] Former OCGA § 24-9-67.1 (c) (2) provided that, in a medical malpractice action, the opinions of an expert shall be admissible

> only if, at the time the act or omission is alleged to have occurred, such expert[,] . . . had actual professional knowledge and experience in the area of practice or specialty in which the opinion is to be given as the result of having been regularly engaged in . . . [t]he active practice of such area of specialty of his or her profession for at least three of the last five years, with sufficient frequency to establish an appropriate level of knowledge, as determined by the judge, in performing the procedure, diagnosing the condition, or rendering the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue; or . . . [t]he teaching of his or her profession [as specified].

Former OCGA § 24-9-67.1 (e) provided, "[a]n affiant must meet the requirements of this Code section in order to be deemed qualified to testify as an expert by means of the affidavit required under Code Section 9-11-9.1." We note that former OCGA § 24-9-67.1 was repealed, effective January 1, 2013; OCGA § 24-7-702 (c), which became effective on that date, contains the same standard for determining an expert's competence to testify as former OCGA § 24-9-67.1. See Ga. L. 2011 (Act 52), pp. 99, 124-125, § 2; *City of Atlanta v. Bennett*, _ Ga. App. _, n. 11 (746 SE2d 198) (2013). Because the provisions of Georgia's new Evidence Code apply "to any motion made or hearing or trial commenced on or after [January 1, 2013,]" Ga. L. 2011 pp. 99, 214, § 101, and because the relevant hearing occurred before that date, the prior Evidence Code applies in this case. *City of Atlanta v. Bennett*, _ Ga. App. at _, n. 11.

[4] As noted above, Dr. Rogan opined that the neurosurgeons failed to diagnose Fisher's condition of arachnoiditis, instead diagnosed his condition as an intradural

affidavit with his or her complaint, and the defendant to whom a claim of malpractice

pertains

> alleges, with specificity, by motion to dismiss filed on or before the
> close of discovery, that said affidavit is defective, the plaintiff's
> complaint shall be subject to dismissal for failure to state a claim, except
> that the plaintiff may cure the alleged defect by amendment pursuant to
> Code Section 9-11-15 within 30 days of service of the motion alleging
> that the affidavit is defective.

OCGA § 9-11-9.1 (e). Under this provision,

> [i]f the plaintiff files an expert affidavit that is inadequate for some
> reason, the defendant can move to dismiss the case, but . . . dismissal is
> warranted in such a case only if the motion identifies with specificity the
> respects in which the affidavit is inadequate, and only if the plaintiff
> fails within 30 days to cure these inadequacies by amendment.

(Punctuation and footnote omitted.) *Ndlovu v. Pham*, 314 Ga. App. at 338. See also

*Porquez v. Washington*, 268 Ga. 649, 651-652 (1) (492 SE2d 665) (1997) (When an

---

schwannoma, and performed an unnecessary and suboptimal surgery (lumbar laminectomy, durotomy, and intradural exploration). Dr. Rogan failed to aver, however, that, at the time the neurosurgeons diagnosed Fisher's spinal condition and performed the surgery, he (Dr. Rogan) had for at least three of the preceding five years regularly engaged in the active practice (or teaching) of neurosurgery or in any overlapping area of practice or specialty that involves knowledge of the diagnosis of intradural spinal tumors and related neurosurgical treatment.

expert affidavit is initially filed with a complaint alleging malpractice, a plaintiff is allowed to supplement the affidavit if the defendant disputes the sufficiency of the affidavit, either as to the expert's competency or as to the sufficiency of the expert's statements regarding negligent acts.); *Harris v. Murray*, 233 Ga. App. 661, 666 (3) (504 SE2d 736) (1998) (accord); see also *Phoebe Putney Mem. Hosp. v. Skipper*, 235 Ga. App. 534, 535-537 (510 SE2d 101) (1998) (holding that the original affidavit could be amended or a new valid affidavit substituted for it, and that, because such had been accomplished before the trial court ruled on the motion to dismiss, the suit was no longer subject to dismissal under OCGA § 9-11-9.1).

Fisher contends that, pursuant to the cure provision of OCGA § 9-11-9.1 (e), he cured the deficiency in the affidavit filed with his original complaint by filing an amended complaint with a substitute affidavit from a new expert, citing *Piscitelli v. Hosp. Auth. of Valdosta*, 302 Ga. App. 746, 752 (691 SE2d 615) (2010).

As in this case, the trial court in *Piscitelli* "was called upon to determine whether dismissal was warranted under OCGA § 9-11-9.1 for failure to satisfy the requirements set forth by OCGA § 24-9-67.1 (c) (2) and (e)" regarding an affiant's competency to testify in a medical malpractice action. 302 Ga. App. at 751. As in this case, before the trial court in *Piscitelli* heard and ruled on the defendant's motion to

8

dismiss based on the original affiant's incompetency, the plaintiff filed the affidavit of a new expert. Id. at 747-748. As in this case, the defendant never challenged the new affiant's competency to testify, and the trial court did not consider whether the affidavit of the new expert satisfied OCGA § 9-11-9.1's pleading requirement. We ruled that, "given [the new affiant's] admittedly wholly unchallenged affidavit, which was submitted in support of [the plaintiff's] professional malpractice action against the [defendant], dismissal of that action based upon a competency determination concerning only [the original affiant] . . . was error." (Punctuation and footnote omitted.) Id. at 753. We therefore reversed the dismissal of the plaintiff's complaint. Id.

We discern no meaningful basis for distinguishing the instant case from *Piscitelli*. Furthermore, we are mindful that, although OCGA § 9-11-9.1 constitutes an exception to the general liberality of pleading allowed under the Civil Practice Act, it nevertheless must be construed in a manner consistent with the liberality of the Act, so long as such a construction does not detract from the gate keeping function of OCGA § 9-11-9.1's pleading requirement, which is to reduce the number of frivolous

malpractice suits. *Porquez v. Washington*, 268 Ga. at 652 (1).[5] In particular, allowing

a plaintiff a broad right of curing an allegedly defective affidavit by amendment "does

not defeat the purpose of the statute, but instead helps to insure that the complaint is

not frivolous." Id. In this case, once the neurosurgeons challenged the sufficiency of

the supporting affidavit, Fisher availed himself of the cure provision of OCGA § 9-

[5] See also *Walker v. Cromartie*, 287 Ga. 511, 512 (2) (696 SE2d 654) (2010) ("The purpose of OCGA § 9-11-9.1 is to reduce the number of frivolous malpractice lawsuits being filed against professionals. The requirement of filing an expert affidavit at the time the complaint is filed serves this stated purpose because it requires plaintiffs to find an expert who will attest that at least one act of professional negligence has occurred, thereby reducing the number of frivolous claims filed.") (citation omitted); *Labovitz v. Hopkinson*, 271 Ga. 330, 336 (519 SE2d 672) (1999) (The legislative intent in enacting OCGA § 9-11-9.1 "was to enact a statute which sought to reduce the number of frivolous professional malpractice actions by placing a procedural hurdle before those plaintiffs who sought damages for professional negligence."); *Handson v. HCA Health Svcs.*, 264 Ga. 293, 294 (443 SE2d 831) (1994) (OCGA § 9-11-9.1 imposes "merely an initial pleading requirement[.] . . . The purpose of this statute is . . . not to force a plaintiff to prove in his pleadings a prima facie case entitling him to a recovery. In addition, the expert affidavit should be construed most favorably to the plaintiff and all doubts resolved in his favor, even if an unfavorable construction of the affidavit is possible, so long as such a construction does not detract from the stated purpose of reducing the number of frivolous malpractice suits.") (citations and punctuation omitted); *Phoebe Putney Mem. Hosp. v. Skipper*, 235 Ga. App. at 534-535 (With regard to amended or substituted affidavits, "plaintiffs must be afforded wide berth to conform to the requirements of OCGA § 9-11-9.1 in accordance with the liberality of the Civil Practice Act as long as the purpose of the affidavit requirement, which is to reduce frivolous malpractice actions, is not thwarted.") (citations, punctuation, and footnotes omitted).

11-9.1 (e),[6] and Dr. Dogali's unchallenged affidavit shows that the purpose of OCGA § 9-11-9.1 is satisfied. We conclude that, under the circumstances, the trial court erred in disregarding Dr. Dogali's affidavit and dismissing Fisher's action based upon a competency determination concerning only Dr. Rogan. *Piscitelli v. Hosp. Auth. of Valdosta*, 302 Ga. App. at 753. See also *Phoebe Putney Mem. Hosp. v. Skipper*, 235 Ga. App. at 536 (Allowing amendment by substitution with a valid affidavit served the gatekeeper purpose of OCGA § 9-11-9.1 and "at the same time allowed a person with an arguably meritorious complaint against a professional for malpractice to enter the door of the courthouse for an airing of her complaint on its merits.").

*Judgment reversed. Phipps, C. J., concurs. Branch, J., concurs in the judgment only.*

---

[6] We note that the breadth of the right of a plaintiff to amend is reflected in OCGA § 9-11-9.1 (e)'s provision that a plaintiff may cure deficiencies "by amendment pursuant to Code Section 9-11-15[,]" although the liberality of amendments otherwise allowed under that Code Section is tempered by OCGA § 9-11-9.1 (e)'s time limitations. See *Jensen v. Yong Ha Engler*, 317 Ga. App. at 883; Richard C. Ruskell, *Davis and Shulman's Ga. Practice and Procedure* § 13.1 (database updated September 2012).