In the Supreme Court of Georgia

Decided:   March 27, 2015

S14G0919.  GALA et al. v. FISHER et al.

HINES, Presiding Justice.

This Court granted a writ of certiorari to the Court of Appeals in *Fisher v. Gala*, 325 Ga. App. 800 (754 SE2d 160) (2014), to determine if that Court properly held that, in a professional malpractice action, when a plaintiff files a complaint accompanied by an affidavit from a person not competent to testify as an expert in the action, OCGA § 9-11-9.1 (e) permits the plaintiff to cure this defect by filing an amended complaint with the affidavit of a second, competent expert.   Finding that the Court of Appeals was correct in holding that the pleading could be so amended, we affirm that Court's judgment.

After he received treatment for a back injury, Dorian Fisher and his wife (collectively "Fisher") sued Vishal C. Gala, M.D., Regis Haid, Jr., M.D., and Atlanta Brain and Spine Care, P.C. (collectively "the neurosurgeons").   The opinion of the Court of Appeals sets forth the following facts of the litigation.

Fisher['s complaint] claimed that he sought treatment after he sustained a back injury in March 2010. After diagnostic testing, Fisher's initial treating physicians diagnosed a possible intradural spinal cord tumor. Fisher sought a second opinion with Dr. Gala, who also diagnosed an intradural spinal cord tumor, specifically, a schwannoma. Dr. Gala recommended a laminectomy at the L5–S1 level of Fisher's spine and removal of the suspected schwannoma. Dr. Gala and Dr. Haid performed the surgery on July 13, 2010. According to Fisher, the surgery revealed no schwannoma at L5–S1, although the neurosurgeons found a bundle of clumping nerve roots consistent with arachnoiditis, and they then explored the S1– S2–S3 level. Still finding no schwannoma, the neurosurgeons explored the dura and, finding no lesion, patched the dura and ended the surgery. In his claim for medical malpractice, Fisher alleged that the neurosurgeons were negligent in diagnosing him with a schwannoma rather than arachnoiditis, that they performed unnecessary and suboptimal neurosurgical procedures (lumbar laminectomy, durotomy, and intradural exploration), and that, as a result of their negligence, he suffered serious complications and permanent disabilities.

With his initial complaint, Fisher filed the affidavit of James Rogan, M.D., who opined that the neurosurgeons violated the standard of care in failing to provide a proper diagnosis of Fisher's condition and in performing an unnecessary and suboptimal surgery which revealed no intradural tumor and which caused post-surgical complications and permanent disabilities. With regard to the basis of his knowledge in performing the procedures, diagnosing the conditions, or rendering the treatments at issue, Dr. Rogan averred that he is board-certified by the American Board of Family Practice, that at least 80 percent of his general practice is devoted to the care of disabled patients and those with neurological disabilities, and that he is familiar with and has personal knowledge of the standard

of skill exercised by physicians generally under the same conditions and like surrounding circumstances as those presented by Fisher.

On August 9, 2012, the neurosurgeons filed a motion to dismiss, challenging Dr. Rogan's competency to testify concerning the neurosurgical care at issue. Fisher filed his amended complaint, with the affidavit of Michael Dogali, M.D., on September 7, 2012. Dr. Dogali opined that, during the July 13, 2010 surgery, the neurosurgeons were negligent in failing to protect the nerves of the cauda equina sufficiently and that, as a result, irreversible nerve injuries occurred during the surgery. Dr. Dogali's affidavit showed that he was a board-certified neurosurgeon and that, at the time of the neurosurgeons' alleged negligence, he had been regularly engaged in the active practice of neurosurgery for at least three of the preceding five years, including performing lumbar intradural surgical procedures and otherwise providing the type of care at issue.

The trial court granted the neurosurgeons' motion to dismiss, ruling that Fisher did not show that Dr. Rogan was competent to testify as to the professional malpractice alleged, and that this pleading defect was not cured by the filing of the amended complaint with the accompanying affidavit of Dr. Dogali, as such was filed after the expiration of the statute of limitations. The Court of Appeals reversed, holding that the new affidavit was authorized under OCGA § 9-11-9.1 (e). *Fisher*, supra. Further facts can be found in the opinion of the Court of Appeals. Id.

Fisher's complaint alleged medical malpractice, and OCGA § 9-11-9.1

3

(a)[1] states that in such a case, there must be filed "with the complaint an

---

[1] OCGA § 9-11-9.1 reads:

(a) In any action for damages alleging professional malpractice against:

> (1) A professional licensed by the State of Georgia and listed in subsection (g) of this Code section;
> (2) A domestic or foreign partnership, corporation, professional corporation, business trust, general partnership, limited partnership, limited liability company, limited liability partnership, association, or any other legal entity alleged to be liable based upon the action or inaction of a professional licensed by the State of Georgia and listed in subsection (g) of this Code section; or
> (3) Any licensed health care facility alleged to be liable based upon the action or inaction of a health care professional licensed by the State of Georgia and listed in subsection (g) of this Code section,

the plaintiff shall be required to file with the complaint an affidavit of an expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim.

(b) The contemporaneous affidavit filing requirement pursuant to subsection (a) of this Code section shall not apply to any case in which the period of limitation will expire or there is a good faith basis to believe it will expire on any claim stated in the complaint within ten days of the date of filing the complaint and, because of time constraints, the plaintiff has alleged that an affidavit of an expert could not be prepared. In such cases, if the attorney for the plaintiff files with the complaint an affidavit in which the attorney swears or affirms that his or her law firm was not retained by the plaintiff more than 90 days prior to the expiration of the period of limitation on the plaintiff's claim or claims, the plaintiff shall have 45 days after the filing of the complaint to supplement the pleadings with the affidavit. The trial court shall not extend such time for any reason without consent of all parties. If either affidavit is not filed within the periods specified in this Code section, or it is determined that the law firm of the attorney who filed the affidavit permitted in lieu of the contemporaneous filing of an expert affidavit or any attorney who appears on the pleadings was retained by the plaintiff more than 90 days prior to the expiration of the period of limitation, the complaint shall be dismissed for failure to state a claim.

(c) This Code section shall not be construed to extend any applicable period of limitation, except that if the affidavits are filed within the periods specified in this

4

Code section, the filing of the affidavit of an expert after the expiration of the period of limitations shall be considered timely and shall provide no basis for a statute of limitations defense.

(d) If a complaint alleging professional malpractice is filed without the contemporaneous filing of an affidavit as permitted by subsection (b) of this Code section, the defendant shall not be required to file an answer to the complaint until 30 days after the filing of the affidavit of an expert, and no discovery shall take place until after the filing of the answer.

(e) If a plaintiff files an affidavit which is allegedly defective, and the defendant to whom it pertains alleges, with specificity, by motion to dismiss filed on or before the close of discovery, that said affidavit is defective, the plaintiff's complaint shall be subject to dismissal for failure to state a claim, except that the plaintiff may cure the alleged defect by amendment pursuant to Code Section 9-11-15 within 30 days of service of the motion alleging that the affidavit is defective. The trial court may, in the exercise of its discretion, extend the time for filing said amendment or response to the motion, or both, as it shall determine justice requires.

(f) If a plaintiff fails to file an affidavit as required by this Code section and the defendant raises the failure to file such an affidavit by motion to dismiss filed contemporaneously with its initial responsive pleading, such complaint shall not be subject to the renewal provisions of Code Section 9-2-61 after the expiration of the applicable period of limitation, unless a court determines that the plaintiff had the requisite affidavit within the time required by this Code section and the failure to file the affidavit was the result of a mistake.

(g) The professions to which this Code section shall apply are:
    (1) Architects;
    (2) Attorneys at law;
    (3) Audiologists;
    (4) Certified public accountants;
    (5) Chiropractors;
    (6) Clinical social workers;
    (7) Dentists;
    (8) Dietitians;
    (9) Land surveyors;
    (10) Marriage and family therapists;
    (11) Medical doctors;
    (12) Nurses;
    (13) Occupational therapists;
    (14) Optometrists;

affidavit of an expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim." And, it is uncontroverted that Dr. Rogan's affidavit did not demonstrate that he was competent to testify as to the neurosurgical care at issue in the malpractice claim. See *Fisher*, supra at 802-803 (fn. 3 & 4).

Nonetheless, Fisher asserts that this situation falls under OCGA § 9-11-9.1 (e), which provides:

> If a plaintiff files an affidavit which is allegedly defective, and the defendant to whom it pertains alleges, with specificity, by motion to dismiss filed on or before the close of discovery, that said affidavit is defective, the plaintiff's complaint shall be subject to dismissal for failure to state a claim, *except that the plaintiff may cure the alleged defect by amendment pursuant to Code Section 9-11-15 within 30 days of service of the motion alleging that the affidavit is defective.*

OCGA § 9-11-9.1 (e) (Emphasis supplied.) Thus, Fisher argues, as the affidavit

---

(15) Osteopathic physicians;
(16) Pharmacists;
(17) Physical therapists;
(18) Physicians' assistants;
(19) Podiatrists;
(20) Professional counselors;
(21) Professional engineers;
(22) Psychologists;
(23) Radiological technicians;
(24) Respiratory therapists;
(25) Speech-language pathologists; or
(26) Veterinarians.

6

of Dr. Dogali and the amended complaint were filed within 30 days of the neurosurgeons' motion to dismiss, the amendment cured the alleged defect in Dr. Rogan's affidavit.

The Court of Appeals correctly held that OCGA § 9-11-9.1 (e) operates in this manner. Although the neurosurgeons contend that the only amendment that can satisfy OCGA § 9-11-9.1 (e) is an amendment to the original affidavit, made by the same affiant whose affidavit originally accompanied the complaint, there is no such provision in either OCGA § 9-11-9.1 (e) or OCGA § 9-11-15[2],

---

[2] OCGA § 9-11-15 reads:

(a) *Amendments*. A party may amend his pleading as a matter of course and without leave of court at any time before the entry of a pretrial order. Thereafter the party may amend his pleading only by leave of court or by written consent of the adverse party. Leave shall be freely given when justice so requires. A party may plead or move in response to an amended pleading and, when required by an order of the court, shall plead within 15 days after service of the amended pleading, unless the court otherwise orders.

(b) *Amendments to conform to the evidence*. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of the evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet the evidence.

7

to which OCGA § 9-11-9.1 (e) refers. As this Court has previously noted, the cure provision now found in OCGA § 9-11-9.1 (e) contains "no express limitation on the nature of the alleged defect subject to remedy." *Porquez v. Washington*, 268 Ga. 649, 652 (fn. 3) (492 SE2d 665) (1997). And, not only do the relevant Code sections not contain the restriction that the neurosurgeons wish to be imposed,

> [b]ecause OCGA § 9-11-9.1 constitutes an exception to the general liberality of pleading allowed under the Civil Practice Act, it is to be construed in a manner consistent with the liberality of the Act so long as such a construction does not detract from the purpose of [OCGA] § 9-11-9.1, which is to reduce the filing of frivolous malpractice suits. [Cit.]

---

(c) *Relation back of amendments*. Whenever the claim or defense asserted in the amended pleading arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back to the date of the original pleadings if the foregoing provisions are satisfied, and if within the period provided by law for commencing the action against him the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

(d) *Supplemental pleadings*. Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit him to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense. If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying the time therefor.

Id. at 652 (1). And nothing in our reading of the statute detracts from that purpose; Fisher has exercised his right to amend his complaint as a matter of course under OCGA § 9-11-15 (a), and produced an affidavit of an expert who opines that professional malpractice occurred. Accordingly, the Court of Appeals did not err in holding that Fisher's amendment to his complaint was permissible under OCGA § 9-11-9.1 (e), and that the ruling of the trial court should be reversed.

Judgment affirmed. All the Justices concur.