**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 19, 2025**

# In the Court of Appeals of Georgia

A25A0517. JOSEPH et al. v. BUTTON et al.

HODGES, Judge.

In this medical malpractice action, Cindy Button and her husband, Thomas Button, sued multiple defendants for injuries stemming from Cindy's October 27, 2021, hysterectomy and post-operative care. Nurse practitioner Lydie Joseph and her employer at the time of the incident, Prime Healthcare Foundation - Southern Regional, LLC ("SRMC") (collectively, the "defendants") appeal the trial court's order denying their motions to dismiss, which were based on the plaintiffs' failure to attach a required expert affidavit to the complaint under OCGA § 9-11-9.1 (a). Because the trial court properly found that the plaintiffs were entitled to utilize the

OCGA § 9-11-9.1 (b) grace period under the circumstances present in this case, we affirm.

1. *Underlying facts and procedural posture.* The facts and procedural posture of this case are not disputed. Cindy and her husband, Thomas Button, filed their original complaint ("original complaint") in the Superior Court of Clayton County against a physician, the estate of another physician who had since died, SRMC, and a few other entities on July 5, 2023. The complaint was filed by attorney Michael Hill with the law firm Mayo/Hill. According to the complaint, Cindy lost an unusual amount of blood during a routine hysterectomy, ultimately causing her to undergo additional surgeries, prolonged hospital stays, and pain and suffering. The Buttons filed an expert affidavit with their original complaint. On September 7, 2023, Hill filed a motion to withdraw from the case, which the court granted on September 26, 2023.

On October 17, 2023, the Buttons' new counsel, Brandon Taylor with the law firm Taylor & Tucker, filed an entry of appearance. Thereafter, the Buttons voluntarily dismissed their original complaint. On October 27, 2023, the Buttons filed a renewal action in the Superior Court of Clayton County naming numerous additional defendants, including Joseph. The renewed complaint indicates that it, in part, "constitutes a new suit against various parties." Specifically, the Buttons allege

2

in their renewed complaint that Joseph deviated from the required standard of care "in that she failed to exercise that degree of care and skill required by the medical profession in general . . . by failing to recognize the severity of Mrs. Button's condition and to then utilize the chain of command to advocate for Mrs. Button to receive more timely treatment." As a result, the Buttons assert that Cindy "suffered pain and suffering, blood loss, anastomotic dehiscence, abdominal abscesses, and infection, requiring further hospitalization and medical treatment." Regarding SRMC, the Buttons allege a claim for medical negligence based on the negligent acts and omissions of its agents and employees, including Joseph, and claims for ordinary negligence and failure to credential, train, and supervise its agents and employees.

The Buttons attached to and incorporated by reference in their renewed complaint their original complaint and its attachments and exhibits, including the expert affidavit of Dr. Amer Karam, dated October 25, 2022, and filed with the original complaint. The renewed complaint indicates that this expert affidavit "specifies at least one negligent act or omission on the part of [two doctors] and their employers and/or principals[.]" The Buttons also attached to the renewed complaint an expert affidavit of Dr. Robert Ertner, dated October 24, 2023, which addresses the

negligence of some of the additional defendants sued in the renewal action, but not Joseph. The renewed complaint indicates that Ertner's expert affidavit "specifies at least one negligent act or omission on the part of [a doctor and two PACU nurses] and their employer and/or principal, [SRMC.]" The Buttons did not attach to their renewed complaint an expert affidavit indicating any negligent acts on the part of Joseph. Instead, they sought to invoke the grace period of OCGA § 9-11-9.1 (b), stating in their renewed complaint and in an attached affidavit signed by Taylor that Taylor and his law firm were representing the Buttons, they were retained less than 90 days before expiration of the applicable statute of limitation, and an expert affidavit specifying at least one negligent act or omission on the part of a few defendants, including Joseph, could not be prepared because of time constraints.

On December 4, 2023, Joseph moved to dismiss the Buttons' renewed complaint, and SRMC moved to dismiss the vicarious liability claim involving Joseph, in which it adopted, incorporated, and joined Joseph's motion. The defendants argued that the grace period in OCGA § 9-11-9.1 (b) was unavailable to the Buttons because they first retained an attorney earlier than 90 days before the expiration of the limitation period. Thereafter, on December 8, 2023, within the grace period, the

4

Buttons filed an amended complaint that included an expert affidavit of Sharon Coffey, dated November 18, 2023. This expert affidavit allegedly "specifies at least one negligent act or omission on the part of the Defendant Lydie Joseph, NP[.]"

Following a hearing, the trial court denied Joseph's and SRMC's motions to dismiss, reasoning that former counsel's involvement prior to the renewed complaint had no bearing on the case, and OCGA § 9-11-9.1 (b) therefore permitted the Buttons' late-filed expert affidavit asserting negligent actions against Joseph. We granted interlocutory review in this case to determine whether the grace period in OCGA § 9-11-9.1 (b) applies under the circumstances presented in this case.

2. *Applicable law and standard of review.* Where, as here, a complaint seeks damages for professional malpractice, OCGA § 9-11-9.1 (a) requires the plaintiff "to file with the complaint an affidavit of an expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim." Failure to attach the required affidavit subjects the complaint to dismissal with prejudice for failure to state a claim. *Roberson v. Northrup*, 302 Ga. App. 405, 406-407 (691 SE2d 547) (2010). OCGA § 9-11-9.1 (b) (the "safe harbor provision"), however, sets forth an exception to the

5

contemporaneous filing requirement, allowing a grace period for filing the expert affidavit in certain situations. That subsection provides in relevant part as follows:

> The contemporaneous affidavit filing requirement pursuant to subsection (a) of this Code section shall not apply to any case in which the period of limitation will expire or there is a good faith basis to believe it will expire on any claim stated in the complaint within ten days of the date of filing the complaint and, because of time constraints, the plaintiff has alleged that an affidavit of an expert could not be prepared. In such cases, if the attorney for the plaintiff files with the complaint an affidavit in which the attorney swears or affirms that his or her law firm was not retained by the plaintiff more than 90 days prior to the expiration of the period of limitation on the plaintiff's claim or claims, the plaintiff shall have 45 days after the filing of the complaint to supplement the pleadings with the affidavit.

OCGA § 9-11-9.1 (b). The statute of limitation for medical malpractice claims is two years "after the date on which an injury or death arising from a negligent or wrongful act or omission occurred." OCGA § 9-3-71 (a). Consequently, the statute of limitation for alleged medical malpractice issues concerning Cindy's October 27, 2021 hysterectomy expired on October 27, 2023.

The parties in this case do not dispute that the plaintiffs filed a timely renewal action. See OCGA § 9-2-61 (a) (providing that an action may be recommenced within

the original applicable period of limitation or within six months after the discontinuance or dismissal, whichever is later, subject to certain requirements not applicable in this case). Nor do the parties dispute that the renewed complaint was filed within the applicable statute of limitation. See *Anglin v. Harris*, 244 Ga. App. 140, 140-141 (1) (534 SE2d 874) (2000) (noting that an action filed on the second anniversary of an injury falls within the limitation period while an action filed one day after the second anniversary of the injury would be time-barred). At issue is whether the safe harbor provision in OCGA § 9-11-9.1 (b) applies under the circumstances presented in this case: when an original complaint includes an expert affidavit but a renewed complaint, filed prior to the expiration of the statute of limitation by a different attorney and law firm hired less than 90 days before expiration of the statute of limitation, adds defendants not included in the original complaint or expert affidavit.

On appeal, this Court conducts a de novo review of a trial court's ruling on a motion to dismiss based on the lack of an expert affidavit. See *Cruz Pico v. Brady*, 345 Ga. App. 859, 860 (815 SE2d 190) (2018). In addition, our review of the trial court's ruling involves the construction of OCGA § 9-11-9.1 (b), which is a legal issue that we

7

address de novo. See *Leggat v. Navicent Health*, 369 Ga. App. 731, 732 (1) (893 SE2d 438) (2023).

3. *Analysis*. In two related enumerations of error, Joseph and SRMC assert that the trial court erred in denying their motions to dismiss Joseph from the case because the court improperly rejected relevant evidence related to the safe harbor provision in OCGA § 9-11-9.1 (b) and misinterpreted that provision. Specifically, the defendants argue, without citing any authority to support their argument, that Taylor, the Buttons' second attorney, was foreclosed from invoking the safe harbor provision in the renewal action. According to the defendants, the trial court disregarded evidence when it improperly found that (i) the Buttons' retention of Hill to file the original complaint "has no bearing on the current case[,]" and (ii) attorney Hill's signature on the original complaint attached to the renewed complaint does not constitute an appearance by Hill in the renewal action. These arguments lack merit.

First, contrary to the defendants' assertion, the trial court did not "disregard" the above evidence; it merely determined that the evidence was irrelevant given the procedural posture of the case.

Second, the trial court properly determined that the evidence was irrelevant. OCGA § 9-11-9.1 (b) authorizes a grace period of 45 days after the filing of the complaint to supplement the pleadings with an expert affidavit in cases where an attorney avers that "his or her law firm was not retained by the plaintiff more than 90 days prior to the expiration of the period of limitation on the plaintiff's claim or claims" and, because of time constraints, an affidavit of an expert could not be prepared. There is no dispute that (i) Taylor filed an affidavit averring the necessary requirements, (ii) Taylor was hired less than 90 days prior to the expiration of the statute of limitation, and (iii) the defendants procedurally complied with the safe harbor requirements in OCGA § 9-11-9.1 (b).

Nonetheless, the defendants assert that the Buttons were foreclosed from utilizing the safe harbor provision. Specifically, they point to the last portion of the safe harbor provision to support their argument that the grace period should not apply to the Buttons:

> If . . . it is determined that the law firm of the attorney who filed the affidavit permitted in lieu of the contemporaneous filing of an expert affidavit *or any attorney who appears on the pleadings* was retained by the plaintiff more than 90 days prior to the expiration of the period of limitation, the complaint shall be dismissed for failure to state a claim.

9

(Emphasis supplied.) OCGA § 9-11-9.1 (b). According to the defendants, Hill, who filed the Buttons' original complaint, qualifies as an "attorney who appears on the pleadings" and, because he was retained more than 90 days prior to the expiration of the period of limitation, the Buttons were foreclosed from utilizing the safe harbor provision. Indeed, it is undisputed that Hill was hired and filed pleadings in the original action more than 90 days prior to the expiration of the applicable statute of limitation. We, however, are not persuaded that Hill qualifies as an "attorney who appears on the pleadings" in the renewal action.

The parties have not cited, and our research has not revealed, any Georgia appellate decisions squarely addressing the specific question presented in this case. We thus turn to the plain language of OCGA § 9-11-9.1 to determine whether the safe harbor provision applies in a renewal action filed by a different attorney than the attorney who filed the original action under the circumstances presented here. In so doing, we begin by noting the well-settled principles involved in conducting a statutory analysis:

> When interpreting provisions of a statute . . . we must presume that the
> General Assembly meant what it said and said what it meant. To that
> end, we must afford the statutory text its plain and ordinary meaning, we

must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. If the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end.

(Citation and punctuation omitted.) *Carr v. Yim*, 369 Ga. App. 389, 392 (893 SE2d 801) (2023). Moreover, "[i]t is our duty to consider the results and consequences of any proposed construction and not so construe a statute as will result in unreasonable or absurd consequences not contemplated by the legislature." (Citation and punctuation omitted.) Id. "A statute is to be construed in accordance with its real intent and meaning and not so strictly as to defeat the legislative purpose, and should be read according to the natural and most obvious import of the language without resorting to subtle and forced constructions for the purpose of either limiting or extending its operation." (Citations and punctuation omitted.) *Glisson v. Hosp. Auth. of Valdosta & Lowndes County*, 224 Ga. App. 649, 653-654 (1) (481 SE2d 612) (1997) (allowing plaintiff to amend complaint to plead the language of OCGA § 9-11-9.1 (b) where the plaintiff did so prior to the court's ruling on a motion to dismiss for failure

to include an expert affidavit with the complaint and the affidavit was filed within the 45-day time period provided in the safe harbor provision).

Applying these statutory construction principles, we conclude that Hill is not an "attorney who appears on the pleadings" in the renewal action as contemplated by OCGA § 9-11-9.1 (b). The statute does not define the terms "appears" or "pleadings." However, Uniform Superior Court Rule ("USCR") 4.2 provides some guidance regarding the terms. That rule, entitled "Entry of Appearance and Pleadings," provides that "[n]o attorney shall *appear* in that capacity before a superior court until the attorney has entered an appearance by filing a signed entry of appearance form or by filing a signed pleading in a pending action." (Emphasis supplied.) Id. It is undisputed that Hill did not file a notice of appearance in the renewal action in this case. It is also clear that, contrary to the defendants' arguments, Hill did not file "a signed pleading in a *pending* action." (Emphasis supplied.) USCR 4.2. The original complaint signed by Hill and filed in the prior action is merely an exhibit attached to the complaint in this pending renewal action: "A copy of the original Complaint, along with all its attendant attachments and exhibits, which was

12

filed in Civil Action File No. 2023CV02174-11, is attached to this Renewal Complaint as **Exhibit R-1**[.]" (Emphasis in original.)

The defendants have cited no case law or statutory authority supporting their assertion that an exhibit — more specifically, an original complaint attached as an exhibit to a renewed complaint — acts as a signed pleading to render an unsuspecting attorney, who filed the original action, an attorney in the renewal action despite the fact that the attorney has not entered an appearance in the renewal action. Although an exhibit attached to a pleading is considered a part of that pleading, see *Garner v. Roberts*, 238 Ga. App. 738, 740 (2) (520 SE2d 255) (1999), we do not find that OCGA § 9-11-9.1 (b)'s use of the phrase "any attorney who appears on the pleadings" includes an instance where a former attorney has signed a prior, dismissed complaint that is attached as an exhibit in a renewal action filed by a different law firm. In fact, OCGA § 9-11-10 (a) mandates that "[e]very pleading shall contain . . . the file number," and USCR 4.2 mandates that all pleadings "shall state[,]" in addition to other requirements, "the style and number of the case[.]" The original complaint filed by Hill and attached to the renewed complaint as an exhibit does not contain the style

and case number of the renewal action and therefore is not "a signed pleading in a pending action" as required by USCR 4.2 to constitute an appearance by an attorney.

To circumvent USCR 4.2's requirements for an appearance, the defendants argue that interpreting the word "appear" to mean satisfying the standard for making an appearance by having met the filing requirements of USCR 4.2 is using the word in a "figurative and forced construction which extend[s] the statute's operation[.]" They cite the Merriam-Webster Dictionary to support their position that the term "appear" simply means "'come[s] in sight' and is 'evident or manifest' on the document's face."[1] Even the Merriam-Webster Dictionary, however, includes "to come formally before an authoritative body" within the definition of "appear."[2] We decline to adopt the defendants' interpretation that "appears on the pleadings" in the context of OCGA § 9-11-9.1 (b) simply means the attorney's name is mentioned somewhere in a pleading or exhibit.

---

[1] Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/appear (visited January 16, 2025).

[2] Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/appear (visited January 16, 2025).

Our interpretation of OCGA § 9-11-9.1 (b) comports with the manner in which Georgia courts generally have construed renewal actions under OCGA § 9-2-61 (a). As noted by the trial court, a renewed complaint under OCGA § 9-2-61 is not a continuation of the original action, but an "action *de novo*." (Citation and punctuation omitted; emphasis in original.) *Carr*, 369 Ga. App. at 394. "[T]he effect of a dismissal is so complete that a suit dismissed without prejudice leaves the situation the same as if the suit had never been brought in the first place[;]" a plaintiff must file a new action and meet "the procedural requirements of filing a new complaint" to revive his claims. (Citations and punctuation omitted.) Id.; see also *Gallagher v. Fiderion Group*, 300 Ga. App. 434, 436 (1) (685 SE2d 387) (2009). The fact that a renewal action is a new action, and the procedural requirements in such action must be met anew, buttresses our conclusion that Hill's hiring and filing of pleadings in the original complaint does not foreclose the Buttons' use of the safe harbor provision in this renewal action filed by Taylor.[3]

---

[3] Based on the facts of this case, we need not reach the issue of whether the safe harbor provision would apply if the same attorney who filed the original complaint subsequently filed the renewal action.

This conclusion also is consistent with the legislative purpose of OCGA § 9-11-9.1, which is "to reduce the number of frivolous malpractice suits being filed[.]" (Citation and punctuation omitted.) *Glisson*, 224 Ga. App. at 653 (1); accord *Oller v. Rockdale Hosp.*, 342 Ga. App. 591, 594 (804 SE2d 166) (2017) ("It is well settled that the purpose of OCGA § 9-11-9.1 is to avoid frivolous lawsuits and that allowing a plaintiff to amend an expert affidavit does not frustrate this purpose."). "This [C]ourt has repeatedly held that the spirit and intent of the Civil Practice Act require that pleadings are to be liberally construed in favor of the pleader[, and t]he language of OCGA § 9-11-9.1 (b) shows a clear legislative intent to give a plaintiff extra time to secure an affidavit when the statute of limitation is about to expire." (Citations and punctuation omitted.) *Glisson*, 224 Ga. App. at 654 (1).

> [B]ecause OCGA § 9-11-9.1 constitutes an exception to the general liberality of pleading allowed under the Civil Practice Act, it is to be construed in a manner consistent with the liberality of the Act so long as such a construction does not detract from the purpose of OCGA § 9-11-9.1, which is to reduce the filing of frivolous malpractice suits.

(Citations and punctuation omitted.) *Gala v. Fisher*, 296 Ga. 870, 875 (770 SE2d 879) (2015) (permitting plaintiffs under OCGA § 9-11-9.1 (e) to cure defect of incompetent

expert affidavit by filing an amended complaint with the affidavit of a second, competent expert even though the second affidavit was filed after expiration of the statute of limitation). Clearly, it runs counter to the language of OCGA § 9-11-9.1 and the liberal construction of pleadings to conclude that the General Assembly intended to foreclose a plaintiff from utilizing the safe harbor provision in OCGA § 9-11-9.1 (b) in a renewal action, filed within the applicable statute of limitation, against a new defendant merely because the plaintiff hired a previous attorney who filed a previous action that was subsequently dismissed. Nothing in our interpretation of the statute detracts from the statute's stated purpose.

Contrary to the defendants' contention, the provisions of OCGA § 9-11-9.1 do, under certain circumstances, permit a party to add an expert affidavit by amendment. See *Gala*, 296 Ga. at 874-875 (finding that under OCGA § 9-11-9.1 (e) and OCGA § 9-11-15, a party may amend his complaint to include a new expert affidavit and is not bound to supply an affidavit made by the same affiant whose affidavit originally accompanied the complaint). Compare *Bardo v. Liss*, 273 Ga. App. 103, 105-107 (2) (614 SE2d 101) (2005) (affirming trial court's dismissal of a complaint in a case that

did not involve the safe harbor provision and noting that the plaintiffs could have filed a renewal action had they dismissed their original complaint prior to the trial court's dismissal). In fact, while not directly on point, appellate decisions allowing plaintiffs to amend their complaints and expert affidavits further support our decision in this case.

For example, in *Thompson v. Long*, 201 Ga. App. 480 (411 SE2d 322) (1991), this Court reversed a trial court order dismissing a defendant physician on the ground that no expert affidavit had been filed with the complaint. There, the plaintiff amended her complaint to cite the requirements of OCGA § 9-11-9.1 (b) and, within the 45-day period, filed a supplement to the complaint attaching the requisite affidavit. Id. at 480-481. Noting that "the language of OCGA § 9-11-9.1 (b) shows a clear legislative intent to give a plaintiff extra time to secure an affidavit when the statute of limitation is about to expire[,]" we held:

> At the time plaintiff filed her complaint, defendant and his counsel were put on notice at a minimum that plaintiff was asserting a malpractice claim against defendant and her claim was being asserted within ten days of expiration of the applicable statute of limitation which would generally allow plaintiff to invoke the exception provided by subsection (b). Plaintiff filed the requisite affidavit within the 45-day period provided by

subsection (b). Thus, defendant is in no worse position than if the plaintiff had understood the language of OCGA § 9-11-9.1 and originally inserted the language required by subsection (b) of that statute in the complaint. Accordingly, the trial court should have denied defendant's motion to dismiss.

(Citation and punctuation omitted.) Id. at 482.

Here, at the time the Buttons filed their renewal action, the defendants were put on notice that the Buttons were asserting additional malpractice claims against additional defendants, including Joseph, and their claims were asserted within ten days of the expiration of the applicable statute of limitation. In fact, unlike the *Thompson* decision, the renewed complaint in this case actually included the requirements specified in OCGA § 9-11-9.1 (b).

In another similar case, the plaintiffs filed a renewed complaint listing defendants not included in the original complaint, and the expert affidavit filed in the original complaint did not specifically mention the new defendants. *Oller*, 342 Ga. App. at 592. The plaintiffs filed additional expert affidavits, but did not file an affidavit specifying acts of negligence on behalf of the newly named defendant until after the statute of limitation had expired. Id. at 592-593. The trial court granted partial

summary judgment to one of the defendants based on the expiration of the statute of limitation before an expert affidavit was filed. Id. at 593. This Court reversed, holding that the plaintiffs' new claims were asserted in the renewal action before expiration of the applicable statute of limitation, see id. at 594, and OCGA § 9-11-9.1 (e) permits a plaintiff to amend an expert affidavit:

> If a plaintiff files an affidavit which is allegedly defective, and the defendant to whom it pertains alleges, with specificity, by motion to dismiss filed on or before the close of discovery, that said affidavit is defective, the plaintiff's complaint shall be subject to dismissal for failure to state a claim, except that the plaintiff may cure the alleged defect by amendment pursuant to Code Section 9-11-15 within 30 days of service of the motion alleging that the affidavit is defective. The trial court may, in the exercise of its discretion, extend the time for filing said amendment or response to the motion, or both, as it shall determine justice requires.

As in *Oller*, the Buttons filed their renewed complaint asserting new claims and new defendants before the expiration of the statute of limitation, putting the defendants on notice of the claims, and they subsequently amended their complaint (within the 45 day safe harbor provision) by attaching an expert affidavit identifying negligent acts on the part of the newly named defendant. 342 Ga. App. at 594-595.

The Buttons merely utilized the safe harbor provision in OCGA § 9-11-9.1 (b) instead of the amendment provision in OCGA § 9-11-9.1 (e).

In summary, the Buttons' renewed complaint properly stated the requirements of the safe harbor provision in OCGA § 9-11-9.1 (b), and their timely filing of the amended renewal complaint, attaching an expert affidavit opining that Joseph committed professional malpractice, complies with the statutory language and legislative intent of OCGA § 9-11-9.1. The trial court did not err in denying Joseph's and SRMC's motions to dismiss.

*Judgment affirmed. McFadden, P. J., and Pipkin, J., concur.*